# Wytheville

## W. H. ALEXANDER v. L. H. WRENN.

June 23, 1932.

Present, Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Sinnott, May & Leaman* and *Martin & Tuck*, for the plaintiff in error.

*James S. Easley* and *E. N. Hardy, Jr.*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action is to recover damages for personal injuries sustained when a golf ball driven by the defendant struck the plaintiff, impairing his sight. From a judgment approving a verdict for $5,000.00 the defendant obtained this writ of error.

The defense made in the trial court, and here repeated, was: (1) That the evidence fails to establish any breach of duty owing by the defendant to the plaintiff; (2) that the plaintiff was guilty of contributory negligence; (3) that the injury was the result of an assumed risk.

These contentions necessitate the examination of the evidence, which in view of the verdict for the plaintiff will be stated in the light most favorable to him.

The plaintiff and defendant on October 15, 1930, were engaged in playing a twosome on the Halifax county golf club course. In driving from the third tee the plaintiff "topped" his ball and it rolled about seventy-five yards from the tee and to the left of the center of a narrow fairway. The defendant drove down the fairway some 123 yards and to the right of the center. From these positions the players were endeavoring to reach the third green, the fairway to which is a "dog leg," that is, it is straight from the tee for 145 yards and then bends sharply to the right and extends 105 yards to the green; the plaintiff, in making his second shot, again "topped" his ball and it went into the rough near the beginning of the bend. The grass and underbrush are thick at this

particular point and golf balls driven therein are not easily found. The plaintiff saw where his ball entered, came to rest, and hurried to the place, passing close to, and in front of, the defendant, who was then standing near his own ball, leaning on his club.

From the lie of the defendant's ball, he either had to loft it over the trees in the rough or approach the third green from an angle around the edge of the "dog leg." If he had attempted the loft shot the plaintiff would have been slightly to the right of a direct line between the lie of the defendant's ball and the green. The defendant stated, however, that this shot was an impossible stroke for him, so he attempted a drive down the fairway, intending to drive about ten feet to the left of a pine standing in the fairway and some sixty feet from its outside edge in the curve. The plaintiff was about fifty-seven or fifty-eight feet from the defendant, looking for his ball; when the defendant made his stroke, the ball instead of going in the intended direction went at an angle of less than thirty-three degrees and struck the plaintiff as he was rising from a stooping position, inflicting the injury in question. The evidence establishes that a golf ball in flight is not easily avoided; that when driven it travels at terrific speed, and that the average player can control neither its direction nor its destination. The only negligence claimed is that the defendant failed to give the plaintiff timely warning of his intended play by calling "fore" before making the stroke.

The question presented is whether or not the defendant was negligent; that is, whether in the exercise of ordinary care he owed the plaintiff the duty of warning him of the danger of being hit by the ball.

It seems that there is no decided case involving the duty which one golf player owes to another when playing in the same group, at least, none was cited in the briefs.

The case of *Andrew* v. *Stevenson*, referred to in 31 Scot. (Rev.) 194, decided in 1906 by the Edinburg Sheriff's

court, involves the duty of golfers to each other when playing in separate groups on the same course, in which it is held that it was not negligence to drive a ball down an open course when the nearest person in front was eighty-four yards away and well out of the direction of the intended flight of the ball, and that a player in another group, hit under such circumstances as a result of a "slice" on the ball, assumed such risk.

The case of *Toohey* v. *Webster*, 97 N. J. Law 545, 117 Atl. 838, 839, 23 A. L. R. 440, involved the duty that a player owed to a caddie engaged by one of a group of players following the defendant's group. The defendant was attempting to drive to the fourth hole and the third green was between him and it. The caddie was not more than four or five feet to the left of a direct line from defendant's position to the fourth green; the plaintiff and the group of players for whom he was one of the caddies were still on, or just leaving, the third green. The defendant, with full knowledge of the position of the parties, attempted to loft his ball over the heads of the plaintiff and the others, but the shot carried low, curved to the left, and struck the plaintiff. The evidence as to whether or not the defendant gave warning by the usual call of "fore" was in conflict, and the court held that "the defendant was under a duty to use reasonable care, before delivering his stroke, to observe whether there were any persons in the general direction of his drive who might be endangered thereby, and, if so, to see that they were adequately warned."

There was a dissenting opinion on the ground that the caddie was guilty of contributory negligence and that he had assumed the risk.

In *Everett* v. *Goodwin*, 201 N. C. 734, 161 S. E. 316, 318, one of the questions involved was the duty one golfer owes to another playing on the same course but in a different group of players. One of the rules of safety promulgated

by the owners of this course was to the effect that those playing in the front group should be allowed at least two drives before the group immediately following drove in their direction. The defendant violated this rule and gave no warning of his intention to the plaintiff, who was in the front group and in the rough some fifteen feet from the tee on which the defendant was standing when he drove the ball which struck the plaintiff. The court held that it was the duty of the defendant under the circumstances to give timely warning of his intention to drive and whether he did or not, on conflicting evidence, was a jury question. The general duty the defendant owed was stated thus:

"The dominating idea bearing upon the subject is that a player upon a golf course must exercise ordinary care in playing the game, and particularly in driving the ball. Of course, the duty to exercise ordinary care is dependent upon the surrounding facts and circumstances of the given case."

There was conflicting evidence as to whether or not the two groups had merged. The court stated that a different rule of liability would apply in the event this had happened.

*Stober* v. *Embry*, 243 Ky. 117, 47 S. W. (2d) 921, 922, decided March, 1932, by the court of appeals of Kentucky, involved the right of a caddie injured on the Audubon County Club golf links by a ball driven from the tee. It appears that the caddie, with the other caddies for these players, was standing in the accustomed place in the rough to the left of the fairway, a distance of about fifty yards from the tee; that the player was aware of the position of the caddie and both the player and the caddie were in plain view and were observing each other's movements. The court held that under these circumstances there was no duty upon the player to give warning of his intended drive, as this fact was already known to the caddies, who were stationed there for the purpose of watching the players and the balls. The court stated that it was the duty of the

player to give notice "to those unaware of his intended play of the purpose to send a ball in the direction of the person so situated as to be in danger."

It was contended in that case that the player owed a duty to the caddie to exercise ordinary care not to injure him, and having seen where the boy was stationed he was under an absolute duty not to hit him with a driven ball. The court, it seems to us, rightly held that such a rule would make the players the insurers of the safety of the caddies, and no such doctrine applies in negligence cases, stating, "it is the duty of the driver of a golf ball to exercise ordinary care for the safety of persons reasonably within the range of danger," and recovery was denied.

■ The principle declared by these cases and supported by reason is that it is the duty of a golf player to exercise ordinary care to prevent injury to others by a driven ball; that before driving, it is his duty to give timely warning to persons unaware of his intention whom he knows, or in the exercise of ordinary care should have known, are in line, or so close to the line of the intended flight of the ball that danger to them reasonably might be anticipated. This principle seems to be recognized by golfers the world over, and they are so accustomed to its every-day application that the word "fore" is usually associated with the game and is recognized by them as a warning cry.

The defendant contends, in effect, that this case does not come within the principle for two reasons: (1) that the plaintiff knew of the defendant's intention; (2) that the plaintiff's position was not within the range of probable danger.

It was established that this club had adopted the rules of the United States Golf Association and the Ancient Honorable of St. Andrews. One of these rules, known to both players, is that except on the drive from the tee "the ball farthest from the hole shall be played first." After

the plaintiff made his second stroke the defendant's ball was farthest from the hole and it was his privilege and right to make the next shot. The above rule, as quoted in the record, is silent as to the position of the other players, but it seems to be an almost universal custom among golf players for all to remain behind the one playing until he makes his shot. This rule and custom contemplate that as the players proceed down the fairway the one making the shot shall be slightly in advance of the others, the player thus having a clear shot to the green and his fellow players remaining behind him in a place of safety until the play is made.

The plaintiff admits knowledge of both the rule and custom and that ordinarily it is observed, but states that there is another custom which prevails upon this particular course, *i. e.*, that if a ball is lost in the rough near the edge of the fairway the owner goes immediately to the place at which it disappeared, play is suspended and all join in search for the lost ball, and that on this occasion he was proceeding in accordance with the local custom.

The defendant, on the other hand, testifies that this local custom is "for the farthest man away to play his ball, and if the lost ball hasn't been found by that time he may join the search," but that no player would be expected to go forward and search for a lost ball and then come back and make his play.

No one testified to this local custom except the plaintiff and the defendant. If it be conceded that the plaintiff violated the general rule by passing in front of the defendant the defendant was aware of the plaintiff's movements. The evidence further shows that the plaintiff had his back to the defendant during the whole of the time he was traversing the fifty-seven, or more, feet from the lie of the defendant's ball to the point at which he was standing when struck, but that the defendant was facing in his direction and the plaintiff was in his line of vision all this time,

certainly up to the moment he began his swing. The plaintiff states that he relied upon the local custom and the general custom requiring the calling of "fore" as a warning. He knew the defendant had the right to make the next shot, but it does not appear that he knew just when the defendant would exercise that right.

The defendant himself seems to have recognized that the duty was upon him to give warning of his intention to play, for he is positive in his statement that he called "fore." Two witnesses, the plaintiff and the defendant's caddie, testified that he did not give any warning of his intention to make the stroke. The verdict of the jury settles this controversy adversely to the defendant. Under these circumstances, the knowledge of the plaintiff that the defendant was entitled to make the next shot is not sufficient to relieve the defendant of the duty of giving warning.

This brings us to the second contention of the defendant, that the plaintiff was not within the range of probable danger. Again the evidence is in conflict. The defendant states, and it is vigorously argued in his brief, that at the time he made his stroke the plaintiff was to his right, at an angle of approximately ninety degrees from the intended line of flight of his ball. The jury might fairly have inferred from the whole evidence that the angle in question was about thirty-two degrees.

The uncontradicted evidence is that the defendant was a wild and erratic player and knew that a golf ball struck by him was liable to fly at almost any angle. Certainly this fact did not decrease the danger to the plaintiff or relieve the defendant of any duty legally imposed upon him to give timely warning of his intention.

A fair interpretation of the testimony of Mr. John Main, a golf professional familar with this course, is to the effect that it is usual and customary for a man preparing to make

the shot from the defendant's lie, with the plaintiff in the position he was, to call "fore." The golf expert called as a witness by the defendant stated that it was usual and customary for a player to give warning of his intention to make a shot if a person was standing within an angle of forty-five degrees to the line of intended flight and close to the lie of the ball, but that a player in the same group forfeits this right to be warned if he advances between the ball to be played and the green. The fact that a companion player, through inadvertence or otherwise, places himself in line of the intended flight of the ball and the player entitled to shoot knows this fact and furthermore sees that such a person is unaware of his intention to make the stroke does not relieve him of the duty to give warning.

Under the circumstances, the jury had a right to conclude that the plaintiff was so close to the line of intended flight of the ball that danger to him should have been anticipated.

While the plaintiff, with knowledge that it was the defendant's privilege to make the next stroke, was thoughtless in advancing beyond the lie of the defendant's ball, yet the defendant knew that the plaintiff had violated the general custom, or ethics, of the game by so doing, and was in friendly conversation with him as he moved forward and voiced no protest thereto. He furthermore knew that the plaintiff's ball was lost; that he had gone forward to look for it; was intent upon the search in plain view and with his back toward defendant who was facing him, and, as stated, was within an angle of less than thirty-three degrees of the intended line of flight of the ball at the time the stroke was made. Under these circumstances the question of contributory negligence was properly submitted to the jury.

The only other question raised is that the injury was the result of a risk assumed by the plaintiff. The doc-

trine of assumed risk and contributory negligence are so closely allied that frequently it is hard to distinguish between the two.

The defendant relies on the *Benjamin Case*, 102 Pa. Super. Ct. 471, 157 Atl. 10, to support his contention that the plaintiff assumed the risk. The facts in that case show that a ball driven from the seventh tee struck the plaintiff, who was putting on the sixth green; that this green is 120 feet to the left and about 100 feet forward of the seventh tee, which indicates an angle of more than fifty degrees. The court held that the driver from that tee owed no duty to a person on the green to give warning of his intention to drive, and, therefore, was guilty of no negligence.

Furthermore, it is stated in November, 1931, Law Notes, in an article entitled the Hazards of Golf, "that this decision, * *, is not in accord with the other authorities" heretofore reviewed.

In the case at bar it was not denied that a person standing within an angle of thirty-three degrees from the intended line of flight of the ball and within fifty-nine feet of the player making the stroke was in danger of being hit by the driven ball.

In the case of *Schlenger* v. *Weinberg*, 107 N. J. Law 130, 150 Atl. 434, 435, 69 A. L. R. 738, the court said:

"* * * a golf course is not usually considered a dangerous place, nor the playing of golf a hazardous undertaking. It is a matter of common knowledge that players are expected not to drive their balls without giving warning when within hitting distance of persons in the field of play, and that countless persons traverse golf courses the world over in reliance on that very general expectation."

In a note to the above case, in the A. L. R. citation, referring to the case of *Cleghorn* v. *Oldham* (1927) 43 Times L. R. (Eng.) 465, it is said:

"The court observed that, in playing games, as in other transactions of life, a person must refrain from doing what a reasonable person would not do, and that, if a jury concluded that a person had done something which a reasonable player in the circumstances would not have done, and if injury resulted therefrom, that person was liable in an action for negligence."

The principles of law involved were substantially stated in the instructions given the jury; the case was fairly tried on its merits, and we find no reversible error therein.

*Affirmed.*