ROBERT HOLLINBECK, BY W. P. HOLLINBECK, HIS FATHER AND GUARDIAN AD LITEM, v. DOROTHEA A. DOWNEY AND ANOTHER, EXECUTRICES OF ESTATE OF JOHN A. DOWNEY, AND ANOTHER.

113 N. W. (2d) 9.

January 19, 1962—No. 38,280.

---

[2]See, State v. James, 252 Minn. 243, 89 N. W. (2d) 904.

482

*Conrad J. Carr,* for appellant.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for respondents.

MAGNEY, COMMISSIONER.

Plaintiff, Robert Hollinbeck, was a caddy at the Town and Country Golf Course in the city of St. Paul. As he was shagging balls on the practice fairway he was struck by a golf ball which had been hit by John A. Downey, now deceased. Plaintiff was injured. Claiming that Downey and John M. Hendry, the golf professional of the club who was giving instructions to Downey at the time, were negligent, he brought this action against the representative of Downey's estate and Hendry. At the close of plaintiff's case the court dismissed the action as to both defendants on the merits. Plaintiff appeals from the order of the court denying his motion to have the dismissal set aside and for a new trial, but only as to the Downey estate.

The golf course had a practice fairway about 100 feet wide and 200 yards long. It extended in an easterly and westerly direction between fairways one and nine. For the first 100 yards it was level, then extended up a hill. The players using this practice fairway stationed themselves at the west end, hitting the golf balls toward the hill. They would hit a number of balls in succession. Each player had a caddy who would stand away the distance that the golfer was hitting, according to the club he was using and his skill as a golfer. The caddy would pick up the balls and put them into a bag. When the player had shot

off his supply, he would motion to the caddy to come in. The caddy would then run at a trotting pace directly up to his player with the bag of balls and dump them. The player would then hit another round.

At the time of the accident on June 28, 1957, plaintiff was 14½ years of age. The first time that he had caddied, except once for his father, was in the spring of 1957. At first he caddied after school and later nearly every day. He testified at the time of the trial that he had caddied 40 rounds before the accident. In a deposition taken previously, he said that he had caddied 83 rounds. He had started to play golf 2 years before and had played not over 25 times. From the caddy house he had seen the caddies shagging balls on the practice fairway numerous times, but only once prior to the day in question had he done any shagging himself. Plaintiff said that being eagle-eyed is part of being a good caddy and that golf balls can come off the club in a variety of directions.

Plaintiff had caddied 27 holes on the day of the accident. The caddy master then directed him to shag balls on the practice fairway for a Mr. Levin. There were three players on the practice fairway— Levin in the center, Downey to the south of him, and a lady golfer to the north. Plaintiff was of the opinion that they were about 15 feet apart, while defendant Hendry, the golf professional, testified that they were about 30 feet apart. Plaintiff characterized the lady's playing as "kind of wild, hitting them in different directions." According to Hendry, Downey was one of the poorest players on the course. He had a handicap of 36, which is as high a handicap as a man player can have. His playing entitled him to a higher handicap. Hendry, who was instructing Downey at the time of the accident, said that Downey was "just a general poor player through all clubs." Plaintiff knew that Downey was not a good golfer as he was just learning—his shots "weren't consistent." Plaintiff said that the lady was hitting all over the place.

Plaintiff had stationed himself at about the foot of the hill. Levin had hit out two bags of balls, about 75 in each bag. He signalled plaintiff to come in. As he was running in "sort of at a trotting pace,"

straight on to his player, with the bag of balls, he was struck by a ball which had been hit by Downey. Plaintiff testified:

"As I was coming in * * * I was looking out for all the golfers who were hitting around me, and especially looking out for this lady who was on the other side of Mr. Levin. * * * then I looked over at Mr. Downey, and I saw a surprised look on his face, and all of a sudden I felt a clunk on my right temple * * *."

As stated, plaintiff had been shagging balls at the foot of the hill, about 100 yards from his player. According to Hendry and plaintiff himself, he was about 30 or 40 yards from Levin when he was hit. The ball came in at an angle. Hendry testified that it was at a 45-degree angle, but on his own estimate as to where plaintiff was at the time he was struck the angle was probably considerably less. Plaintiff was off to the side about 30 or 35 feet. Hendry, who was with Downey, did not see plaintiff coming in until just before he was hit. Apparently neither did Downey. When they saw him, both shouted "fore," but it was too late. Plaintiff did not see Downey when he swung or shortly before. It was not the custom on the practice fairway for the player to shout "fore" before swinging since, it was stated, it would cause too much confusion.

One of the most quoted cases involving golf ball injuries is Alexander v. Wrenn, 158 Va. 486, 492, 164 S. E. 715, 717. In that case the court stated the rule to be—

"* * * it is the duty of a golf player to exercise ordinary care to prevent injury to others by a driven ball; that before driving, it is his duty to give timely warning to persons unaware of his intention whom he knows, or in the exercise of ordinary care should have known, are in line, or so close to the line of the intended flight of the ball that danger to them reasonably might be anticipated."

In Berry v. Howe, 34 Wash. (2d) 403, 406, 208 P. (2d) 1174, 1177, a case involving a caddy, the court stated:

"In all of his conduct which might result in harm to the caddy the golfer must exercise reasonable and ordinary care under the circumstances, * * *. Driven balls do not always travel in the straight course

intended and frequently deflect to the right or left, and thus a rather extensive zone of danger may be created. * * *

"It is the duty of a golf player in the exercise of ordinary care to give to a caddy timely warning of his intended drive if the caddy is not aware of such intention, and the player either knows or by the exercise of ordinary care under the existing circumstances should know of such unawareness. He must use ordinary care to observe whether a caddy is within the general direction of his drive, or otherwise within a zone of danger, if the ball should deviate from its intended course, and exercise ordinary care to see that he is adequately warned."

See, also, Gardner v. Heldman, 82 Ohio App. 1, 80 N. E. (2d) 681; Biskup v. Hoffman, 220 Mo. App. 542, 287 S. W. 865.

The only case which has come to our attention involving a caddy on a practice fairway is Jesters v. Taylor (Fla.) 105 So. (2d) 569, 571. The facts are entirely different from those in the instant case and need not be stated. The court held that there was sufficient evidence to support a verdict in favor of the caddy. A concurring opinion stated that the jury had the right to find that the defendant was negligent—

"* * * in failing to use ordinary care to observe whether there were any caddies in the 'line of fire' on his practice drive who might be endangered thereby and to make sure they were adequately warned of his intention to hit a practice shot in their direction. [Citing cases.] As stated in Miller v. Rollings * * * [Fla. 1952, 56 So. (2d) 137, 138], 'One who is about to strike a golf ball, must, in the exercise of ordinary care, give adequate and timely notice to those who are unaware of his intention to play and who may be endangered by the play.' This is a universally recognized custom and rule required of each golfer, * * * and we think it is applicable as well to the practice fairway as to the regular playing fairways."

Any theory of liability on the part of Downey will have to be predicated upon a jury finding that the caddy was in a place of danger. While he was stationed 100 yards down the fairway, he was undoubtedly in a reasonably safe place, but as he was running in to his player with the bag of balls the jury could find that he was running in a

place of danger. It is common knowledge, even to nonplayers, that the force of a driven golf ball is intense, and it can be classified with dangerous instruments. Caddies shagging balls on a practice fairway, while running in, are subject to greater hazards than those ·caddying for players in a game. Often there are several players on a practice fairway, each player hitting balls in quick succession, up to 75 as in the case of Levin. And the caddies are in front of the players, not alongside or to the rear of them, as is usually the case.

On the practice fairway, players do not shout "fore" before driving. It seems that a caddy is in greater danger while shagging balls on a practice fairway, where a battery of two to seven players are hitting balls down the field, dozens in succession, than on a regular fairway. He is ahead of the players all the time. Some precaution must be taken to replace the shouting of "fore," especially when the caddy is in a place of danger and unaware of a drive to be made. The poorer the player the greater is the zone of danger. Plaintiff, in running in with the bag of balls, was in a zone of danger, enlarged by Downey's lack of skill. Plaintiff did not notice that Downey was about to make a drive; he was unaware of it. If Downey knew, or in the exercise of ordinary care should have known, that plaintiff was in a zone of danger and was unaware of Downey's intention to hit, Downey should have given him a warning or desisted from striking the ball until plaintiff was in a place of safety. It is our opinion that it was a question for the jury to pass upon.

Defendant contends that plaintiff assumed the risk, while such defense was not specifically pleaded but litigated by consent, and was also guilty of contributory negligence. The question of whether a party has assumed the risks of a given situation usually is for the jury, unless the evidence is conclusive. It becomes a question of law when the evidence is conclusive. Geis v. Hodgman, 255 Minn. 1, 95 N. W. (2d) 311. In our opinion the evidence is not conclusive that plaintiff assumed the risks as a matter of law. It was a question for the jury. Nor are we of the opinion that this boy of 14 years, under the facts here, was guilty of contributory negligence as a matter of law.

Order reversed.