**Mary GRISIM, Appellant,**

v.

**TAPEMARK CHARITY PRO–AM GOLF TOURNAMENT, et al., Southview Country Club, Gene Koecheler, Respondents.**

No. C9–86–706.

Court of Appeals of Minnesota.

Oct. 14, 1986.

Review Granted Dec. 17, 1986.

Scott D. Eller, Best & Flanagan, Minneapolis, for Grisim.

Thomas L. Thompson, Lance B. Nyberg & Associates, Golden Valley, for TapeMark Charity Pro-Am Golf Tournament, et al.

Richard P. Wright, Bloomington, for Southview Country Club.

Mary C. Cade, Rider, Bennett, Egan & Arundel, Minneapolis, for Gene Koecheler.

Heard, considered and decided by PARKER, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

The trial court granted summary judgment in favor of respondents TapeMark Company and TapeMark Charity Pro-Am Golf Tournament (TapeMark); Southview Country Club (Southview) and Gene Koecheler and dismissed Mary Grisim's claims arising from an injury she sustained while watching a golf tournament. On appeal, Grisim argues that the trial court erred in finding that primary assumption of the risk was applicable in this case and in applying the same standard of care to the individual golfer, Koecheler, as it applied to TapeMark and Southview. We reverse and remand for trial.

## FACTS

Mary Grisim brought suit against TapeMark, Southview and Gene Koecheler for a serious eye injury she sustained while she was a spectator at a charity golf tournament. In her complaint, Grisim alleged that TapeMark and Southview were negligent in failing to provide adequate safety, protection, and supervision for the spectators at the tournament. Grisim claimed that Koecheler failed "to give adequate and timely warnings to persons who might be struck by any of [his] golf shots." All

three respondents moved for summary judgment claiming that as a spectator Grisim had assumed the risk of injury and that primary assumption of risk was a bar to her recovery.

In the memorandum accompanying its order granting summary judgment to all respondents, the trial court noted:

> The facts are not in dispute. On June 30, 1984, Mary Grisim and a friend attended the Tapemark Charity Pro-Am Golf Tournament at Southview Country Club. After watching different golfers play the first nine holes, Ms. Grisim followed one foursome for the entire back nine * * *. After that foursome completed the 18th hole, Ms. Grisim walked to the left of the green and sat down on the grass under a large tree. She was approximately 30 to 50 feet from the edge of the green and about 10 to 15 feet from the base of the tree * * *. Ms. Grisim noticed bleachers located behind the 18th green, but they were very crowded. There was only room in the center, and people would have had to move for Ms. Grisim and her friend to get in * * *. There were many people sitting in the shade of the tree * * *.

> Shortly after Ms. Grisim sat down under the tree, defendant Gene Koecheler hit his tee shot on the par three 18th hole. Koecheler's shot hooked left and struck Ms. Grisim in her left eye. Koecheler never yelled "fore" or gave any other type of warning * * *. Ms. Grisim never heard anyone yell "fore" and she did not hear the shot fall through the leaves above her * * *. As a result of the injury, Ms. Grisim's left eye had to be surgically removed.

> Ms. Grisim saw no ropes, barricades or signs indicating spectator areas the day of the accident * * *. Additionally, there were no marshall's, [sic] ushers, or officials to assist spectators.

The trial court went on to conclude that TapeMark and Southview had provided safe seating, but Grisim chose not to use that seating. The trial court determined that because Grisim made this choice, primary assumption of risk applied and "she assumed the risk to protect herself from known dangers or such dangers incident to the game as would be apparent to a reasonable person in the exercise of due care." Based on this rationale, the trial court dismissed Grisim's claims against TapeMark, Southview and Koecheler.

## ISSUES

1. Did the trial court err in granting summary judgment in favor of respondents?

2. Did the trial court err in applying the same standard of care to the individual golfer, Koecheler, as it applied to TapeMark and Southview?

## ANALYSIS

### I.

On appeal from a summary judgment this court addresses two questions: (1) are there any genuine issues of material fact? and (2) did the trial court err in its application of the law? *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (1979). Grisim argues that summary judgment was inappropriate in this case because there is a genuine issue of material fact about whether TapeMark and Southview had provided safe seating for the spectators at the tournament.

Primary assumption of risk relates to whether a defendant had any duty to protect a plaintiff from a risk of harm. *Springrose v. Willmore*, 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971). In the case of spectators at an inherently dangerous sporting event, the Minnesota Supreme Court has recognized that those managing such an event have only a limited duty to protect the spectators. *Wells v. Minneapolis Baseball and Athletic Association*, 122 Minn. 327, 331, 142 N.W. 706, 708 (1913). In the case of spectators at a baseball game, the supreme court described the duty as follows:

> We believe that, as to all who, with full knowledge of the danger from thrown or

batted balls, attend a baseball game the management cannot be held negligent when it provides a choice between a screened in and an open seat; the screen being reasonably sufficient as to extent and substance.

*Id.* at 331, 142 N.W. at 708. *See also Swagger v. City of Crystal,* 379 N.W.2d 183, 186 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Feb. 19, 1986). Once this limited duty has been satisfied, the spectator who chooses to use an unprotected seating area primarily assumes the risk for his or her own safety and there is no further duty on the part of the management or sponsor.

In determining whether the protected seating offered was adequate, the *Wells* court, in reversing and remanding for a new trial, indicated:

> What precaution the ordinarily prudent person, furnishing a public amusement of this kind, should take to warn and protect the spectators from the attendant dangers of which they may be ignorant, we think a question for the jury.

122 Minn. at 332, 142 N.W. at 708.

■ In the present case, however, the trial court did not allow a jury to consider whether TapeMark and Southview had provided proper protection. Rather, upon respondents' motions for summary judgment, the trial court concluded that Grisim assumed the risk of being hit by an errant golf ball. It reached this conclusion despite evidence presented by Grisim that various golf associations have set standards for crowd control at golf tournaments that include the use of barricades and/or marshals. The trial court noted the absence of either barricades or marshals here. In addition, despite the lack of further evidence regarding the sufficiency of the seating provided for those who might have wanted to take advantage of it, the court concluded that indeed, safe seating had been provided.

We believe that evidence presented by Grisim raises a genuine issue of material fact about whether there was adequate protection provided at the golf tournament.

The trial court erred in resolving this issue; it should be resolved by a jury. If the jury were to find that TapeMark and Southview had provided adequate safe seating and Grisim chose not to take advantage of that seating, then primary assumption of risk would apply. *See Modec v. City of Eveleth,* 224 Minn. 556, 29 N.W.2d 453 (1947); *Swagger,* 379 N.W.2d 183.

## II.

Grisim argues that the trial court erred when it applied the same duty of care to Koecheler, a participant in the tournament, as it did to the promoters and managers of the tournament.

In *Hollinbeck v. Downey,* 261 Minn. 481, 113 N.W.2d 9 (1962), the supreme court stated that the duty of a golfer was, "to exercise ordinary care to prevent injury to others by a driven ball." 261 Minn. at 484, 113 N.W.2d at 11 (quoting *Alexander v. Wrenn,* 158 Va. 486, 492, 164 S.E. 715, 717 (1932)). In *Hollinbeck* a golfer was on a practice fairway hitting balls, one of which hit and injured a caddy collecting balls on the same fairway. The supreme court noted that, unlike golfers on a regular course, golfers on practice fairways do not ordinarily shout the warning "fore," however:

> if [defendant] knew, or in the exercise of ordinary care should have known, that plaintiff was in a zone of danger and was unaware of [defendant's] intention to hit, [defendant] should have given him a warning or desisted from striking the ball until plaintiff was in a place of safety. It is our opinion that it was a question for the jury to pass upon.

261 Minn. at 486, 113 N.W.2d at 12–13. *See also Wood v. Postelthwaite,* 6 Wash. App. 885, 496 P.2d 988 (1972), *aff'd* 82 Wash.2d 387, 510 P.2d 1109 (1973); *Thomas v. Shaw,* 217 Ga. 688, 124 S.E.2d 396 (1962); *Page v. Unterreiner,* 106 S.W.2d 528 (Mo.Ct.App.1937).

■ In the present case the trial court erred in applying the same duty of care to Koecheler as it did to Southview and Tape-Mark. Further, the trial court noted that

Koecheler did not call out a warning, that no measures were taken to indicate spectator areas, and that no personnel were present to assist spectators. This evidence raises a genuine issue of material fact regarding whether under the circumstances here present, Koecheler should have called out a warning. Grisim is entitled to have this issue resolved by a jury.

## DECISION

The trial court erred in granting summary judgment in favor of respondents based on primary assumption of risk. There were genuine issues of fact about whether safe seating was provided by TapeMark and Southview and whether in the exercise of ordinary care Koecheler should have called out a warning.