## CIRCUIT COURT OF THE CITY OF RICHMOND

R. Lee Stephenson

v.

Richard Redd et al.

October 1, 1990

Case No. LS-661-3

By JUDGE T. J. MARKOW

This matter is before the court on defendant's demurrers to plaintiff's amended motion for judgment and bill of particulars.

The facts as alleged in the motion for judgment and bill of particulars are as follows: the plaintiff was participating in a recreational league softball game, occupying the infield position of first base. The defendant Richard Redd (Redd) was batting for the defendant, Manchester Board and Paper Company, Inc. (Manchester) team when he hit a grounder toward third base. He ran towards first base while a teammate of the plaintiff fielded the ball and threw it to the plaintiff, who had her left foot tucked under the edge of the bag facing second base, and her left glove hand extended toward third base to receive the throw. She did not encroach upon the air space over the first base line or the bag.

While plaintiff was in this position, Redd, failing to remain in the base path, ran into her side, striking her between the rib cage and pelvis with such force that her body went heels over head, causing injury which resulted in the loss of her kidney and spleen. The plaintiff alleges that Redd was acting as an agent, servant, and employee of Manchester while participating in the softball game.

The plaintiff has alleged negligence, gross negligence, recklessness, or reckless disregard for her safety in violation of a duty owed her by the defendant to refrain from such conduct. The defendants argue that the plaintiff may not seek recovery under a simple negligence theory and that she has failed to allege facts which support her allegation of gross negligence or reckless disregard. This argument is based on the position that because the alleged tort occurred in a recreational athletic contest, the plaintiff either assumed the risk of the collision between her and the defendant or consented to it.

This is a case of first impression in Virginia, and the court has the guidance of the Supreme Court only in relation to the game of golf which is not a very satisfactory analog for softball. The most pertinent distinction between the two is the lack of physical contact between the contestants in golf, whereas in softball "tagging" the other players to put them out is an integral part of the game. Nevertheless, *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 339 S.E.2d 538 (1986), is useful as a starting point as it does establish the proposition that participating in a recreational sport does not, as a matter of law, relieve participants of a duty of reasonable care. Manchester has said that it "cannot find any case in Virginia supporting the proposition that there is a general duty of care imposed upon mankind to exercise ordinary care in the undertaking of all activities in which mankind might be involved." *Thurston*, at least, makes it clear that participants in sporting events owe a duty to exercise reasonable care to avoid injury to other participants in the game of golf.

The Supreme Court found in *Thurston* that "[t]he basic rule of law applicable to golfers is that a player upon a golf course must exercise reasonable care in playing the game to prevent injury to others." The determination of whether that duty was fulfilled "is measured by the surrounding facts and circumstances of each case." *Id.* at 480, 339 S.E.2d at 541 (citing *Alexander v. Wrenn*, 158 Va. 486, 491, 164 S.E. 715, 716 (1932) (jury question on defendant's negligence presented when golfers injured by ball struck by defendant, who had not called "fore")). The court stated that an expert opinion on golfing etiquette, rules, and customs was properly admitted since

they were not of such common knowledge that a lay juror could form an intelligent and accurate opinion as an expert could. *Id.* at 481, 339 S.E.2d at 542. A part of the facts and circumstances to be considered in this case will be the rules of the league in which the parties played.

Section 50 of the Restatement (Second) of Torts comment b (1965) specifies that participation in a game manifests consent to those bodily contacts which are permitted by the rules of the game, but that violation of a rule designed for the safety of the participants subjects the violator to liability for injury caused by the transgression. A number of jurisdictions have used the distinction of whether a rule was designed for safety or merely to shape the play of the game in making a determination of liability. *See generally* Annotation, *Liability of Participants in Team Athletics*, 77 A.L.R.3d 1300 (1977).

This categorization of rules appears to this court as perhaps a useful guideline, but really no more than a factor to be considered in making the more basic determination of whether behavior is simple negligence or recklessness. Furthermore, it would invite secondary arguments about the classification of the rules themselves and would not alleviate the problem of behavior that does not break any rule *per se* but which may nevertheless cause harm to others; *i.e.*, a bat slipping from the sweaty hands of a player and hitting another as occurred in *Gaspard v. Grain Dealers Mut. Ins. Co.*, 131 So. 2d 831 (La. App. 1961). Whether the slip was caused by simple negligence or recklessness was still the basic determination to be made, and the liability thereto was a question of law based on the scope of the duty of care, shaped by the risk assumed by the players founded on their experience and understanding of the possibility of harm to them from their exposure to the game.

In a discussion of an application of an assumption of the risk defense, the court in *Amusement Slides v. Lehmann*, 217 Va. 815, 818-19, 232 S.E.2d 803, 805 (1977), made it clear that the court can find assumption of the risk applies as a matter of law in situations where reasonable people cannot differ whether plaintiff fully appreciates the nature and extent of the risk involved. This court finds that is the situation where people voluntarily choose to play contact sports. The contestants have by

their choice assumed the risk ordinarily incident to their sport, but they do not assume the risk of recklessness or intentional misconduct. This is in accord with the policy of a number of jurisdictions, which is articulated particularly well in *Kabella v. Bouschelle*, 672 P.2d 290 (N.M. App. 1983) (vigorous and active participation in sporting events should not be chilled by threat of litigation). It is also commonsensical and as is pointed out in this discussion of jury instructions for assumption of the risk:

> What the courts have been searching for is some way to let the jurors know that they do not have to take the plaintiff at his word, but that they may instead test his protestations of ignorance of the risk by some external standard based on ordinary principles of credibility and common sense. It would be much better if the courts would simply say so.

Prosser & Keeton, *The Law of Torts* (5th Ed. Supp. 1990). This court is going to accept their invitation and say so, finding that, in the context of a contact sport, it is such common sense that reasonable minds cannot differ that the risk of ordinary negligence was assumed by the plaintiff, sustaining the demurrers of the defendants Redd and Manchester as to the claims for simple negligence. Persons engaging in such sports should not have to be concerned that some jury would have the final say in whether a usual risk of the game which resulted in injury turned the players' fun into a litigation nightmare.

Going beyond the usual risks of the game, however, is another story, at least as to the game of softball when the contact expected is being tagged, players on the base path incidentally colliding, and so on, a player should not assume the risk of grossly negligent conduct.

The court, therefore, overrules the demurrers to the claims based on allegations of gross negligence and reckless disregard for the safety of the plaintiff. The allegation that Redd did not remain in the base path and that plaintiff did not block the base path is sufficient to withstand demurrers charging failure to plead a cause of action based on any of those theories.