LILLEHAUG, Justice.
In 2016, a ski area outside Duluth, Spirit Mountain, was the scene of an accident that caused severe injuries to a ski instructor. While teaching a young student, the instructor was struck by an adult snowboarder performing an aerial trick. The instructor sued the snowboarder for negligence, but the district court dismissed her claim based on the doctrine of implied primary assumption of risk, which is a complete bar to tort liability. The court of appeals reversed. Soderberg v. Anderson , 906 N.W.2d 889 (Minn. App. 2018). This appeal requires that we decide, for the first time, whether to extend that doctrine to recreational skiing and snowboarding. We decide not to extend it and, therefore, affirm the court of appeals' decision, though on different grounds.
FACTS
On the morning of January 3, 2016, appellant Lucas Anderson, age 35, went snowboarding at Spirit Mountain near Duluth. Spirit Mountain welcomes both skiers and snowboarders to enjoy runs marked "easiest," "more difficult," and "difficult."
*202 Anderson considered himself to be an expert snowboarder. He began skiing in elementary school and took up snowboarding when he was 15.
When Anderson snowboarded at Spirit Mountain, he typically warmed up by going down less challenging runs. That morning, Anderson went down part of a "more difficult" run called Scissor Bill, which merges with an "easiest" run called Four Pipe. As he left Scissor Bill and entered Four Pipe, Anderson slowed down, looked up for other skiers and snowboarders coming down the hill, and proceeded downhill.
Anderson then increased his speed, used a hillock as a jump, and performed an aerial trick called a backside 180. To perform the trick, Anderson-riding his snowboard "regular"-went airborne, turned 180 degrees clockwise, and prepared to land "goofy."[1] Halfway through the trick, Anderson's back was fully facing downhill. He could not see what was below him.
Respondent Julie Soderberg was below him. A ski instructor employed by Spirit Mountain, she was giving a lesson to a six-year-old child in an area of Four Pipe marked "slow skiing area." At the moment when Anderson launched his aerial trick, Soderberg's student was in the center of the run. Soderberg was approximately 10 to 15 feet downhill from, and to the left of, her student. She was looking over her right shoulder at her student.
As Anderson came down from his aerial maneuver, he landed on Soderberg, hitting her behind her left shoulder. Soderberg lost consciousness upon impact. She sustained serious injuries.
Soderberg sued Anderson for negligence. Anderson moved for summary judgment, arguing that, based on undisputed facts and the doctrine of implied primary assumption of risk, he owed Soderberg no duty of care and was entitled to judgment as a matter of law. The district court granted summary judgment in Anderson's favor.
The court of appeals reversed and remanded. Soderberg , 906 N.W.2d at 894. Based on its own precedent of Peterson ex rel. Peterson v. Donahue , 733 N.W.2d 790 (Minn. App. 2007), rev. denied (Minn. Aug. 21, 2007), the court of appeals assumed that the doctrine of implied primary assumption of risk generally applies to actions between skiers. Soderberg , 906 N.W.2d at 892. The court then held that material fact issues precluded summary judgment as to whether Soderberg appreciated the risk that she could be crushed from above in a slow skiing area, and whether Anderson's conduct "enlarged the inherent risks of skiing." Id. at 893-94. Concluding that the district court erred in granting summary judgment to Anderson, the court of appeals remanded the case to the district court. Id . at 894. We granted Anderson's petition for review and directed the parties to specifically address whether Minnesota should continue to recognize the doctrine of implied primary assumption of risk.
ANALYSIS
Anderson argues that he owed no duty of care to Soderberg based on the doctrine of implied primary assumption of risk. The doctrine of primary assumption of risk is part of our common law.
*203 Springrose v. Willmore , 292 Minn. 23, 192 N.W.2d 826, 827-28 (1971). The application or extension of our common law is a question of law that we review de novo. See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc. , 844 N.W.2d 210, 214 (Minn. 2014).
In Springrose , we clarified the distinction between primary and secondary assumption of risk. Secondary assumption of risk is an affirmative defense that may be invoked when the plaintiff has unreasonably and voluntarily chosen to encounter a known and appreciated danger created by the defendant's negligence. Springrose , 192 N.W.2d at 827. Secondary assumption of risk is "an aspect of contributory negligence," and is part of the calculation of comparative fault. Id.
By contrast, primary assumption of risk is not a defense and applies only in limited circumstances. Daly v. McFarland , 812 N.W.2d 113, 120-21 (Minn. 2012) ; Springrose , 192 N.W.2d at 827 (explaining that primary assumption of risk "is not ... an affirmative defense"). Unlike secondary assumption, primary assumption of risk "completely bars a plaintiff's claim because it negates the defendant's duty of care to the plaintiff." Daly , 812 N.W.2d at 119. Therefore, primary assumption of risk precludes liability for negligence, Springrose , 192 N.W.2d at 827, and is not part of the calculation of comparative fault. Primary assumption of risk "arises 'only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks.' " Bjerke v. Johnson , 742 N.W.2d 660, 669 (Minn. 2007) (quoting Olson v. Hansen , 299 Minn. 39, 216 N.W.2d 124, 127 (1974) ); see Armstrong v. Mailand , 284 N.W.2d 343, 351 (Minn. 1979) (noting that the application of primary assumption of risk "is dependent upon the plaintiff's manifestation of consent, express or implied, to relieve the defendant of a duty").
Here, the parties agree that Soderberg did not expressly assume the risk of being hit by Anderson. So the issue is whether she assumed the risk by implication.
We first considered the applicability of the doctrine of implied primary assumption of risk to sporting events in Wells v. Minneapolis Baseball & Athletic Ass'n , 122 Minn. 327, 142 N.W. 706 (1913), a case in which a spectator at a baseball game was injured by a fly ball. Id. at 707. We rejected the proposition that spectators assume the risk of injury if seated behind the protective screen between home plate and the grandstand. Id. at 707-08. We determined that the ball club was "bound to exercise reasonable care" to protect them by furnishing screens of sufficient size. Id. at 708 (citation omitted) (internal quotation marks omitted).
Nineteen years later, we held that a spectator assumed the risk of injury of being hit by a foul ball by sitting outside the screened-in area. Brisson v. Minneapolis Baseball & Athletic Ass'n , 185 Minn. 507, 240 N.W. 903, 904 (1932). We concluded that the ball club had provided enough screened-in seating "for the most dangerous part of the grand stand." Id. We later clarified in Aldes v. Saint Paul Ball Club, Inc. , 251 Minn. 440, 88 N.W.2d 94 (1958), that a baseball patron "assumes only the risk of injury from hazards inherent in the sport, not the risk of injury arising from the proprietor's negligence." Id. at 97. Thus, the doctrine applies to "hazards inherent in the sport." Id.
We applied our flying-baseball cases to flying golf balls in Grisim v. TapeMark Charity Pro-Am Golf Tournament , 415 N.W.2d 874 (Minn. 1987). We held that injury from a flying golf ball was an inherent danger of the sport. Id. at 875. The tournament's sole duty, we said, was to provide the spectator with "a reasonable *204 opportunity to view the participants from a safe area." Id. But we did not say that recreational golfing negligence claims are barred by the doctrine. Nor did we cast doubt on our decision in Hollinbeck v. Downey , 261 Minn. 481, 113 N.W.2d 9, 12-13 (1962), which held that if a golfer knows that another person is in the zone of danger, the golfer should either give the other a warning or desist from striking the ball. See Grisim , 415 N.W.2d at 875-76 (distinguishing the facts in Grisim from those in Hollinbeck , 113 N.W.2d at 12-13, and therefore declining to apply Hollinbeck ).
We have also extended the doctrine to two forms of ice skating: hockey and figure skating. Flying pucks are part of the inherently dangerous game of hockey, we held in Modec v. City of Eveleth , 224 Minn. 556, 29 N.W.2d 453, 456-57 (1947). We stated that "[a]ny person of ordinary intelligence cannot watch a game of hockey for any length of time without realizing the risks involved to players and spectators alike." Id. at 455.[2]
We applied the doctrine to recreational figure skating in Moe v. Steenberg , 275 Minn. 448, 147 N.W.2d 587 (1966), in which one ice skater sued another for injuries arising out of a collision on the ice. Id. at 588. We held that the plaintiff " 'assumed risks that were inherent in the sport or amusement in which she was engaged, such as falls and collisions with other skaters....' " Id. at 589 (quoting Schamel v. St. Louis Arena Corp. , 324 S.W.2d 375, 378 (Mo. Ct. App. 1959) ). But we excluded from the doctrine skating that is "so reckless or inept as to be wholly unanticipated." Id . Along the same lines, in Wagner v.Thomas J. Obert Enterprises , 396 N.W.2d 223 (Minn. 1986), we counted roller skating among other "inherently dangerous sporting events" in which participants assume the risks inherent in the sport. Id. at 226. We made clear, however, that "[n]egligent maintenance and supervision of a skating rink are not inherent risks of the sport itself." Id.
Recreational snowmobiling, though, is a different matter. We have consistently declined to apply the doctrine to bar claims arising out of collisions between snowmobilers. In Olson v. Hansen , 299 Minn. 39, 216 N.W.2d 124 (1974), we observed that, although snowmobiles can tip or roll, such a hazard "is one that can be successfully avoided. A snowmobile, carefully operated, is no more hazardous than an automobile, train, or taxi." Id. at 128. Similarly, we "refused to relieve [a] defendant of the duty to operate his snowmobile reasonably and analyzed the defendant's conduct under the doctrine of secondary assumption of risk." Daly v. McFarland , 812 N.W.2d 113, 120-21 (Minn. 2012) (citing Carpenter v. Mattison , 300 Minn. 273, 219 N.W.2d 625, 629 (1974) ). In 2012, we reaffirmed that snowmobiling is not an inherently dangerous sporting activity. Id . at 121-22.
The closest we have come to discussing the application of implied primary assumption of risk to recreational downhill skiing was in Seidl v. Trollhaugen, Inc. , 305 Minn. 506, 232 N.W.2d 236 (1975). That case involved a claim by a ski area patron who had been struck by a ski instructor. Id . at 239-40. The cause of action arose before Springrose . Id . at 240 n.1. We did not analyze the question of whether the doctrine of primary assumption of risk applied to recreational skiing and snowboarding. See id. at 240 & n.1. Instead, we affirmed the district court's decision not to submit to the jury, for lack of evidence, the *205 issue of secondary assumption of risk. Id. at 240-41.
With this case law in mind, we turn now to the question of whether to follow the example of the court of appeals in Peterson , 733 N.W.2d 790, and extend the doctrine of implied primary assumption of risk to recreational downhill skiing and snowboarding.[3] To do so would relieve skiers and snowboarders (collectively, "skiers") of any duty of care owed to others while engaged in their activity. We decide not to do so, for three reasons.
First, although there is no question that skiers can and do collide with one another, the record does not substantiate that injurious collisions between skiers are so frequent and damaging that they must be considered inherent in the sport. As the National Ski Areas Association has recognized through its seven-point Responsibility Code (adopted by Spirit Mountain), skiing and snowboarding contain "elements of risk," but "common sense and personal awareness can help reduce" them. This recognition counsels against a flat no-duty rule that would benefit those who ski negligently. As the Connecticut Supreme Court has explained, "If skiers act in accordance with the rules and general practices of the sport, at reasonable speeds, and with a proper lookout for others on the slopes, the vast majority of contact between participants will be eliminated. The same may not be said of soccer, football, basketball and hockey...." Jagger v. Mohawk Mountain Ski Area, Inc. , 269 Conn. 672, 849 A.2d 813, 832 (2004). We relied on similar reasoning in our line of recreational snowmobiling cases, in which we noted that the hazard "is one that can be successfully avoided." Olson , 216 N.W.2d at 128.
Second, even though today we do not overrule our precedent regarding flying sports objects and slippery rinks, we are loathe to extend the doctrine of implied primary assumption to yet another activity. "The doctrine of assumption of risk is not favored, and should be limited rather than extended." Suess v. Arrowhead Steel Prods. Co. , 180 Minn. 21, 230 N.W. 125, 126 (1930). Our most recent case considering implied primary assumption of risk, Daly , reflects that reluctance.[4] See 812 N.W.2d at 119-22. Similarly, the nationwide trend has been toward the abolition or limitation of the common-law doctrine of implied primary assumption of risk. See Leavitt v. Gillaspie , 443 P.2d 61, 68 (Alaska 1968) ; 1800 Ocotillo, LLC v. WLB Grp. , Inc. , 219 Ariz. 200, 196 P.3d 222, 226-28 (2008) ; Dawson v. Fulton , 294 Ark. 624, 745 S.W.2d 617, 619 (1988) ; P.W. v. Children's Hosp. Colo. , 364 P.3d 891, 895-99 (Colo. 2016) ; Blackburn v. Dorta , 348 So.2d 287, 291-92 (Fla. 1977) ; Salinas v. Vierstra , 107 Idaho 984, 695 P.2d 369, 374-75 (1985) ; Pfenning v. Lineman , 947 N.E.2d 392, 403-04 (Ind. 2011) ; Simmons v. Porter , 298 Kan. 299, 312 P.3d 345, 354-55 (2013) ; Murray v. Ramada Inns, Inc. , 521 So.2d 1123, 1132-33 (La. 1988) ;
*206 Wilson v. Gordon , 354 A.2d 398, 401-02 (Me. 1976) ; Abernathy v. Eline Oil Field Servs., Inc. , 200 Mont. 205, 650 P.2d 772, 775-76 (1982) (holding that "the doctrine of implied assumption of risk is no longer applicable in Montana"); McGrath v. Am. Cyanamid Co. , 41 N.J. 272, 196 A.2d 238, 239-41 (1963) ; Iglehart v.Iglehart , 670 N.W.2d 343, 349-50 (N.D. 2003) ; Christensen v. Murphy , 296 Or. 610, 678 P.2d 1210, 1216-18 (1984) ; Perez v. McConkey , 872 S.W.2d 897, 905-06 (Tenn. 1994) ; Nelson v. Great E. Resort Mgmt., Inc. , 265 Va. 98, 574 S.E.2d 277, 280-82 (2003) ; King v. Kayak Mfg. Corp. , 182 W.Va. 276, 387 S.E.2d 511, 517-19 (1989) (modifying the defense "to bring it in line with the doctrine of comparative contributory negligence"); Polsky v. Levine , 73 Wis.2d 547, 243 N.W.2d 503, 505-06 (1976) ; O'Donnell v. City of Casper , 696 P.2d 1278, 1281-84 (Wyo. 1985).
Third, we are not persuaded that, if we do not apply the doctrine of implied primary assumption of risk to recreational downhill skiing and snowboarding, Minnesotans will be deterred from vigorously participating and ski operators will be adversely affected. No evidence in the record suggests that the prospect of negligent patrons being held liable chills participation in skiing and snowboarding. Logically, it seems just as likely that the prospect of an absolute bar to recovery could deter the participation of prospective victims of negligent patrons.[5]
Although we decline to further extend the doctrine of implied primary assumption of risk, we also decline to overrule our precedent by abolishing the doctrine in its entirety. We ordered briefing on the question of abolition, and we appreciate the well-researched submissions and arguments of the parties and amici. But, as we said in Daly , in which we declined to extend the doctrine to snowmobiling, " '[w]e are extremely reluctant to overrule our precedent....' " 812 N.W.2d at 121 (quoting State v. Martin , 773 N.W.2d 89, 98 (Minn. 2009) ). And we still see a role-limited as it may be-for this common-law doctrine in cases involving the sports to which it has been applied.
Because we decline to extend the doctrine of implied primary assumption of risk to recreational downhill skiing and snowboarding, we need not reach the question of whether the court of appeals, which assumed the doctrine applied,[6] erroneously concluded that genuine issues of material fact preclude summary judgment. Instead, we affirm the court of appeals' disposition-reversal and remand-on a different ground.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
ANDERSON, J., took no part in the consideration or decision of this case.

Riding a snowboard "regular" means that the rider's left foot is in the front of the snowboard, the rider's right foot is in the back, and the rider is facing right. Riding "goofy" means that the rider's right foot is in the front, the rider's left foot is in the back, and the rider is facing left.

In Diker v. City of St. Louis Park , 268 Minn. 461, 130 N.W.2d 113, 118 (1964), and citing Modec , we stated the general rule of assumption of risk in hockey, but did not apply the rule to "a boy only 10 years of age."

In Peterson , the court of appeals affirmed the decision of the district court, which granted summary judgment to a defendant on the plaintiff's negligence claim stemming from a collision between the two on a ski hill. 733 N.W.2d at 791. Based on other decisions in which "courts have applied primary assumption of the risk to actions between sporting participants," the court of appeals held that "primary assumption of the risk applies to actions between skiers who knew and appreciated the risk of collision."Id . at 792-93.

That reluctance is also reflected in another case decided today, Henson v. Uptown Drink, LLC , 922 N.W.2d 185, 2019 WL 287474 (Minn. Jan. 23, 2019), in which we decline to extend the doctrine of implied primary assumption of risk to the operation and patronage of bars.

Spirit Mountain (like many ski operators) relies on the doctrine of express primary assumption of risk. It requires patrons to execute forms and wear lift tickets whereby patrons expressly assume all risks of injury and release their legal rights.

Based on our decision here, the court of appeals' decision in Peterson , 733 N.W.2d 790, holding that implied primary assumption of risk applies to collisions between skiers, is overruled.