Christopher John DALY, Respondent,

v.

Zachary John McFARLAND, Appellant.

No. A10–1184.

Supreme Court of Minnesota.

April 25, 2012.

---

William O. Bongard, Marcia K. Miller, Sieben, Grose, Von Holtum & Carey, Ltd., Minneapolis, MN, for respondent.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; and Michael T. O'Rourke, Erickson, Zierke, Kuderer & Madsen, P.A., Fairmont, MN, for appellant.

## OPINION

MEYER, Justice.

Respondent Christopher John Daly sued appellant Zachary John McFarland for injuries sustained as the result of an accident involving two snowmobiles. A unanimous jury returned a special verdict form finding that both Daly and McFarland were negligent, but that Daly's negligence was not a direct cause of the accident. The jury then allocated 30% of the fault for the accident to Daly. The court entered judgment for Daly in the amount of $442,633.50, the full amount of damages that the jury found Daly to have suffered. McFarland then moved for judgment as a matter of law (JMOL), arguing that the district court improperly reconciled the jury's special verdict form answers, and that McFarland was not negligent as a matter of law. In the alternative, McFarland moved for a new trial because of error in the reconciliation of the special verdict form, and also because of the failure of the court to instruct the jury on the emergency rule or the primary assumption of risk doctrine. The district court denied the motion in its entirety. The court of appeals affirmed. We affirm in part, reverse in part, and remand.

This case arises out of a snowmobiling accident that occurred on January 20, 2007. Daly, McFarland, Neil Forsberg, and Jeff Engelkes are all in their mid-thirties, had operated snowmobiles together for years, and were experienced snowmobile drivers. The four riders departed from Engelkes' small engine repair shop. Outside of Fulda, the group crossed a bean field, riding four abreast. Daly slowed down at the end of the field and McFarland passed him as they approached a ditch. While McFarland was passing Daly, McFarland's snowmobile hit a drift and vaulted into the air. McFarland pushed the snowmobile away from his body to avoid injury, and it flipped toward Daly. Daly tried to avoid McFarland's snowmobile, but the two snowmobiles collided, causing Daly to fall off his snowmobile and suffer injuries.

At trial Daly argued that the accident occurred as a result of McFarland's excessive and negligent speed. Daly claimed that while he slowed down to allow someone else to lead through the ditch, McFarland maintained his speed of at least 60 miles per hour. Daly argued that McFarland was negligent in not adjusting his speed to deal with drifts as he came across them, as required by Minn.Stat. § 84.87, subd. 2 (2010), and that McFarland's unsafe speed caused the wreck.

Deputy Chad Kempema, who was the officer at the scene, testified that McFarland admitted at the time of the accident that he had lost control of his snowmobile.

Daly testified that he slowed down in the bean field while McFarland did not. Daly saw McFarland pass him and hit something, and then McFarland's "snowmobile just shot straight up in the air." McFarland agreed that Daly had slowed down and that McFarland had passed him.

Kenneth Drevnick, an accident reconstruction expert, testified on behalf of Daly. Drevnick testified that McFarland lost control of his snowmobile because of McFarland's speed and some modifications McFarland made to his snowmobile, which contributed to the snowmobile's "vault" into the air when it hit the drift.

McFarland claimed that the collision was an accident and that up until the point where he hit the snowdrift, he drove reasonably. McFarland argued that the four riders involved were experienced snowmobilers, riding at a safe speed, and obeying the law. McFarland estimated that the whole group drove between 45 and 50 miles per hour in the field, and that he was at that speed when he hit a drift and his snowmobile launched into the air. McFarland testified that he pushed the snowmobile away from his body after the snowmobile went in the air. McFarland argued that if he was negligent in driving, that Daly was also negligent, since Daly failed to pay attention, was wearing headphones, and should have seen the hazardous drifts as well. Daly admitted that he was wearing headphones and listening to music.

McFarland testified that he would have slowed down had he seen a drift, depending on its size. McFarland also testified that the snowdrifts they encountered were for the most part soft, and that he had not encountered any icy patches. He said that when operating a snowmobile it is not possible to tell before hitting a drift whether it will be hard or soft. He also stated that in his 20 years of riding he had never

had a snowmobile react to a drift as it did during this accident.

The other two snowmobilers, Forsberg and Engelkes, testified that there was no horseplay, racing, or goofing around during the ride. Forsberg said the spacing and the speed of the group was safe. Both Forsberg and Engelkes said that the group's speed was consistent and that they considered it safe. However, Forsberg did not see McFarland pass Daly, and Engelkes did not actually see the accident at all.

William Elkin, an accident reconstructionist, testified for McFarland. Elkin based his opinions on case files, photographs, snowmobile safety materials, and Drevnick's report. Elkin testified that snowmobiles were more hazardous than automobiles or motorcycles, and that riding in a group had a greater risk of collision than riding solo because of rider proximity. He also noted that wearing headphones and listening to music would decrease a rider's ability to perceive danger. Elkin testified that a snowdrift of the size encountered by McFarland would not normally be expected to roll or rotate a snowmobile, and would not be identified by a snowmobiler as a hazard. Elkin also asserted that the angle at which a snowmobile hits a drift is more important than the impact speed in determining whether the snowmobile will become airborne.

Before closing arguments, McFarland requested that CIVJIG 25.16, the emergency rule instruction, be given to the jury, which was denied. The parties, however, agreed on the wording of the special verdict form.

A unanimous jury returned a special verdict finding that both Daly and McFarland were negligent, and that Daly's negligence was not a direct cause of the accident. However, the jury also allocated 30% of the fault for the accident to Daly.

After determining the jury intended to say that Daly's negligence had not caused the accident, the district court entered judgment for Daly in the amount of $442,633.50, the full amount awarded by the jury for Daly's damages from the accident.

McFarland moved for JMOL on two grounds: (1) that McFarland was not liable as a matter of law based on the doctrine of primary assumption of the risk; and (2) that the district court improperly reconciled the jury's answers on Daly's negligence. In the alternative, McFarland moved for a new trial because of the improper reconciliation of the special verdict form, and also because of the failure of the court to instruct the jury on the emergency rule or the primary assumption of risk doctrine. The district court denied the motion in its entirety.

The court of appeals affirmed, holding that the district court properly denied McFarland's motion for JMOL because primary assumption of risk did not apply to the range of normal snowmobiling occurrences. The court of appeals upheld the denial of the emergency rule instruction because McFarland was not confronted with a sudden emergency, and deferred to the district court's broad discretion in reconciling the special verdict form.

McFarland appeals on three grounds: (1) that the primary assumption of risk doctrine should include recreational snowmobiling and relieve McFarland of his duty of care owed to Daly; (2) that the jury should have been given an instruction regarding the emergency rule; and (3) that the district court improperly reconciled the special verdict form.

## I.

■ McFarland argues the primary assumption of risk doctrine should apply to preclude as a matter of law any liability for negligent operation of a snowmobile by an experienced snowmobile operator. A motion for judgment as a matter of law is reviewed de novo. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn.2009). Under Minn. R. Civ. P. 50.01, a court grants judgment as a matter of law if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." JMOL is inappropriate if "jurors could differ on the conclusions to be drawn from the record." *Bahr*, 766 N.W.2d at 919. We review the evidence in the light most favorable to the prevailing party, which in this case is Daly. *Id.*

■ When applicable, the primary assumption of risk doctrine completely bars a plaintiff's claim because it negates the defendant's duty of care to the plaintiff. *Springrose v. Willmore*, 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971) ("Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm."). "Primary assumption of the risk completely negates a defendant's negligence." *Bjerke v. Johnson*, 742 N.W.2d 660, 669 (Minn.2007).

■ The doctrine of primary assumption of risk "applies 'only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to these risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent.' " *Wagner v. Thomas J. Obert Enters.*, 396 N.W.2d 223, 226 (Minn. 1986) (quoting *Olson v. Hansen*, 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974)); *see also Armstrong v. Mailand*, 284 N.W.2d

343, 351 (Minn.1979) ("[Primary assumption of risk's] application is dependent upon the plaintiff's manifestation of consent, express or implied, to relieve the defendant of a duty. Its application is not dependent upon the wisdom or reasonableness of the plaintiff's consent."). In addition, the primary assumption of risk doctrine is limited to certain types of circumstances. *See Wagner*, 396 N.W.2d at 226. The doctrine commonly applies to participants and spectators of inherently dangerous sports. *See id.* ("One of the few instances where primary assumption of risk applies is in cases involving patrons of inherently dangerous sporting events."); *see also Grisim v. TapeMark Charity Pro–Am Golf Tournament*, 415 N.W.2d 874, 876 (Minn.1987) (relieving amateur golfers of duty of care towards spectators); *Rieger v. Zackoski*, 321 N.W.2d 16, 23–24 (Minn.1982) (relieving duty of care towards patrons at the track during a sanctioned auto race); *Moe v. Steenberg*, 275 Minn. 448, 450, 147 N.W.2d 587, 589 (1966) (relieving defendant of duty of care in ice skating collisions); *Modec v. City of Eveleth*, 224 Minn. 556, 563, 29 N.W.2d 453, 457 (1947) (barring claims by spectators at a hockey game).[1]

We have not applied the primary assumption of risk doctrine to bar claims for injury arising out of snowmobiling. Instead, on two separate occasions, we have explicitly refused to apply the doctrine to claims based on negligent operation of a snowmobile. *Carpenter v. Mattison*, 300

Minn. 273, 277, 219 N.W.2d 625, 629 (1974); *Olson*, 299 Minn. at 44, 216 N.W.2d at 127–28. In *Olson*, the plaintiff, a passenger on defendant's snowmobile, was injured when the snowmobile rolled down a hill. 299 Minn. at 41, 216 N.W.2d at 126. The district court applied the primary assumption of risk doctrine to bar plaintiff's claims. *Id.* at 43, 216 N.W.2d at 127. We reversed, saying that the "sport of snowmobiling" was not an "inherently dangerous sporting" activity to which the doctrine applied because hazards like tipping or rolling could "be successfully avoided." *Id.* at 44, 216 N.W.2d at 128. "A snowmobile, carefully operated, is no more hazardous than an automobile, train, or taxi." *Id.* at 44, 216 N.W.2d at 128. We also declined to conclude that snowmobiles were dangerous instrumentalities per se. *Id.* at 44 n. 2, 216 N.W.2d at 128 n. 2.

We again discussed tort liability for snowmobiling a few months after the *Olson* decision in *Carpenter*, 300 Minn. 273, 219 N.W.2d 625. There, the plaintiff's snowmobile was hit from behind by defendant's snowmobile, which caused injury to the plaintiff's leg. *Id.* at 275, 219 N.W.2d at 628. We first held that the statute governing reasonable operation of a snowmobile, Minn.Stat. § 84.87, subd. 2 (2010), was not unconstitutionally vague, and then reaffirmed *Olson*. *Id.* at 277, 219 N.W.2d at 629 ("[T]he operation of a snowmobile does not involve primary assumption of risk.").[2] Ultimately, we refused to relieve defendant of the duty to operate his snow-

---

1. Primary assumption of risk is also applied to theories of recovery based on strict products liability theory and strict liability for abnormally dangerous activities. *See* Michael K. Steenson, *The Role of Primary Assumption of Risk in Civil Litigation in Minnesota*, 30 Wm. Mitchell L.Rev. 115, 134–35 (2003).

2. Snowmobilers are under a statutory duty to use reasonable care. *See* Minn.Stat. § 84.87, subd. 2 (enacted 1967, not amended in rele-

vant part) ("It shall be unlawful for any person to drive or operate any snowmobile in the following unsafe or harassing ways: (1) at a rate of speed greater than reasonable or proper under all the surrounding circumstances; (2) in a careless, reckless or negligent manner so as to endanger the person or property of another or to cause injury or damage thereto[.]").

mobile reasonably and analyzed the defendant's conduct under the doctrine of secondary assumption of risk. *Id.* at 277, 219 N.W.2d at 629.[3]

McFarland essentially is asking that we overturn *Olson* and *Carpenter* and hold that he was relieved of his duty to operate his snowmobile with reasonable care because the four snowmobile operators were experienced and engaging in an abnormally dangerous sporting activity. McFarland argues that snowmobiles are now more dangerous than they were in 1974 when we decided *Olson* and *Carpenter*, and that cars are comparatively safer than they were in 1974. Specifically, McFarland argues that snowmobiles have more horsepower and acceleration than they did in 1974. Automobiles now have safety features like airbags, seatbelts, safety glass, and force-absorbing bumpers, all of which snowmobiles lack. McFarland also argues that group riding is more dangerous than single riding because of the increased risk of collision. Daly counters that ordinary snowmobile operation is analogous in safety to driving a car or motorcycle. Daly notes that snowmobiles have more safety features than they did in the 1970s, and that modifications made to the snowmobiles by the parties in this case increased safety. Daly also testified that group riding is safer than single riding because co-riders are available to render aid in the case of an emergency.

■ "We are 'extremely reluctant to overrule our precedent under principles of *stare decisis*' ... [and w]e require a 'compelling reason' before a prior decision will be overruled." *State v. Martin*, 773

N.W.2d 89, 98 (Minn.2009) (quoting *State v. Lee*, 706 N.W.2d 491, 494 (Minn.2005)). McFarland's arguments for overturning *Olson* and *Carpenter* are not compelling for three reasons: (1) the record does not conclusively establish that circumstances have changed in relation to snowmobile safety since we decided *Olson* and *Carpenter* in 1974; (2) McFarland does not justify how overruling *Olson* and *Carpenter* would be consistent with the Legislature's explicit decision to affirm the duty to operate a snowmobile with reasonable care; and (3) the record does not establish that Minnesota case law is obsolete or out of line with snowmobile negligence principles in other jurisdictions.

First, both parties make arguments about snowmobile safety, largely predicated on concessions by the other party at trial. However, snowmobiles are not now necessarily more dangerous than they were in 1974 when this court decided *Olson* and *Carpenter*. Reviewing the evidence in the record in the light most favorable to Daly, it is fair to conclude that snowmobiles are equally or more safe than they were in 1974, and that group riding is somewhat more safe overall than riding alone. This evidence does not conclusively establish that we should revisit our factual determinations about snowmobile safety in *Olson* and *Carpenter*.

■ Second, McFarland's argument fails to account for snowmobilers' statutory duty of care. In *Olson*, we did not explicitly discuss primary assumption of risk for snowmobiles in the context of Minn.Stat. § 84.87, subd. 2, even though the statute was enacted in 1967. *See* 299 Minn. at 44,

---

**3.** Historically, primary assumption of risk was distinguished from secondary assumption of risk, which was "an affirmative defense to an established breach of duty which may only be raised when the plaintiff has voluntarily chosen to encounter a known and appreciated

danger created by the negligence of the defendant." *Wagner*, 396 N.W.2d at 226 (quoting *Olson*, 299 Minn. at 43, 216 N.W.2d at 127). Secondary assumption of risk is now a form of contributory negligence. *Bjerke*, 742 N.W.2d at 669 n. 5.

216 N.W.2d at 128. In *Carpenter*, however, we invoked Minn.Stat. § 84.87, subd. 2, holding that it was not unconstitutionally vague and analyzing liability for snowmobilers under secondary, not primary, assumption of risk. 300 Minn. at 277, 219 N.W.2d at 629. In general, we follow statutory standards of care in the tort context. *See Johnson v. Farmers & Merchants State Bank of Balaton*, 320 N.W.2d 892, 897 (Minn.1982) (setting out a four-part test for use of statutory violations as evidence of negligence).

Here, Minn.Stat. § 84.87, subd. 2, establishes that snowmobile drivers have a duty to operate their snowmobiles with reasonable care and at a reasonable speed given the surrounding circumstances. In a related context, we have refused to allow primary assumption of risk to relieve the defendant of a duty of reasonable care for automobiles. *See Iepson v. Noren*, 308 N.W.2d 812, 815–16 (Minn.1981). A snowmobiler's statutory duty of care is analogous to an automobile driver's statutory duty of care and lends further support to our decision not to overrule our precedent.

▮▮▮ Finally, Minnesota is not an outlier in rejecting the application of primary assumption of risk to snowmobiling. The case upon which *Olson*, 299 Minn. at 44, 216 N.W.2d at 128, relied, for example, is still good law in Utah. *See Ujifusa v. Nat'l Housewares, Inc.*, 24 Utah 2d 219, 469 P.2d 7, 8–9 (1970) (declining to apply primary assumption of risk to snowmobiles). Other courts declining to apply primary assumption of risk have come to the same conclusion. *See, e.g., Reed v. AMF W. Tool, Inc.*, 431 F.2d 345, 348 (9th Cir.1970) (applying Idaho law to hold that assumption of risk for snowmobiling is analyzed under contributory negligence); *Powell v. Alaska Marine Equip., Inc.*, 453 P.2d 407, 409–10 (Alaska 1969) (analyzing assumption of risk for snowmobiles under compar-

ative negligence); *Watson v. Zanotti Motor Co.*, 219 Pa.Super. 96, 280 A.2d 670, 672 (1971) (declining to apply primary assumption of risk to snowmobile rider). *But see Haider v. Zadrozny*, 61 A.D.3d 1077, 876 N.Y.S.2d 215, 216 (2009) (holding that primary assumption of risk bars recovery for injuries sustained while riding upon or being towed behind a snowmobile). Thus, McFarland has not provided a "compelling reason" to overrule *Olson* and *Carpenter*, and we decline to do so. We hold that the doctrine of primary assumption of risk does not apply to preclude Daly's claims that McFarland owed a duty of reasonable care in the operation of his snowmobile.

## II.

▮▮▮ We turn next to McFarland's claim that he is entitled to a new trial because the court declined to give an emergency rule instruction. We review a trial court's refusal to give a jury instruction for abuse of discretion. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002). "The district court has broad discretion in determining jury instructions, and we will not reverse where jury instructions 'overall fairly and correctly state the applicable law.'" *Stewart v. Koenig*, 783 N.W.2d 164, 166 (Minn.2010) (quoting *Hilligoss*, 649 N.W.2d at 147). District courts "likewise possess broad latitude in determining the propriety of a specific instruction." *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). "A party is entitled to a specific jury instruction if evidence exists at trial to support the instruction." *State v. Yang*, 774 N.W.2d 539, 559 (Minn.2009). A new trial "is required if the jury instruction was erroneous and such error was prejudicial to respondent," or "if the instruction was erroneous and its effect cannot be determined." *Morlock v. St. Paul Guardian Ins. Co.*, 650 N.W.2d 154, 159 (Minn.2002).

■ The emergency rule "provides that 'one, suddenly confronted by a peril, through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions.'" *Byrns v. St. Louis Cnty.*, 295 N.W.2d 517, 519 (Minn.1980) (quoting *Johnson v. Townsend*, 195 Minn. 107, 110, 261 N.W. 859, 861 (1935)). The jury instruction "should always be given where it is consistent with the theory of one of the parties to the action and where the evidence submitted by such party would sustain a finding that he had been confronted with a sudden peril or emergency and acted under its stress." *Gran v. Dasovic*, 275 Minn. 415, 419, 147 N.W.2d 576, 579 (1966). The emergency rule is "a special application of the general standard of reasonable care. When given, it requires a jury to consider the fact of sudden peril as a circumstance in determining the reasonableness of a person's response thereto." *Trudeau v. Sina Contracting Co.*, 241 Minn. 79, 84, 62 N.W.2d 492, 496 (1954).

■ An emergency rule instruction is only available in instances where the evidence is

> sufficient to support a finding (1) that the claimed emergency actually or apparently existed; (2) that the perilous situation was not created or contributed to by the person confronted or, as held or stated in many cases, by the tortious act or conduct of such person; (3) that alternative courses of action in meeting the emergency were open to such person, or that there was an opportunity to take some action to avert the threatened casualty; and (4) that the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or a similar situation.

*Daugherty v. May Bros. Co.*, 265 Minn. 310, 318, 121 N.W.2d 594, 599–600 (1963) (citation omitted). If the district court concludes that application of the emergency rule is a fact question upon which reasonable juries could differ, it should give the instruction with directions to disregard the rule if its requirements are not met. *Minder v. Peterson*, 254 Minn. 82, 88, 93 N.W.2d 699, 705 (1958).

■ McFarland argues that he confronted one of two potential emergencies: (1) the snowdrift that caused McFarland's snowmobile to vault into the air; and (2) McFarland's need to push the snowmobile away from his body while in the air. McFarland concludes that the lack of an emergency rule instruction left the jury without guidance in evaluating McFarland's decisions in responding to these emergencies.

■ The essential requirement underlying the emergency rule is confrontation of a sudden peril requiring an instinctive reaction. *Gran*, 275 Minn. at 419, 147 N.W.2d at 579. In this case, the record does not establish that the presence of the snowdrift met the test justifying an emergency rule instruction.[4] The district court stated on the record that the reason it did not give the emergency rule instruction is that the situation was not an emergency, characterizing an emergency as akin to a deer jumping into the road. Our case law supports the district court's determination. A snowdrift that McFarland described as a normal hazard of snowmobiling and in the

---

4. McFarland's decision to push his snowmobile away from his body was not the basis for Daly's claim of negligence at trial. Thus, any reaction by McFarland after his snowmobile vaulted in the air is not a relevant emergency.

normal range of snowdrifts did not create an emergency situation here.

The record supports the district court's conclusion that whatever happened in the bean field, McFarland did not confront a sudden peril requiring an instinctive reaction. McFarland never saw the drift as hazardous before impact, so any emergency that did occur as a result of his speed was caused by his own driving and thus was not subject to an emergency rule instruction. *See* 4 Minn. Dist. Judge's Ass'n, *Minnesota Practice–Jury Instruction Guides, Civil,* CIVJIG 25.16 (5th ed.2006) (noting that the emergency rule only applies to those perils not caused by the party requesting the instruction); *see also Thielbar v. Juenke,* 291 Minn. 129, 134, 189 N.W.2d 493, 497 (1971).

Further, the record does not support a claim that McFarland could have acted differently to avoid the harm. McFarland testified that he did not acknowledge the drift in question as dangerous. Once McFarland hit the drift, he claimed that the safe course of action was to get his snowmobile away from his body. Even if the situation was an emergency that McFarland did not cause, it could not have been avoided in the first place, according to McFarland's own testimony.

■ Finally, even if we assume error in failing to give the instruction, any error was harmless. The district court allowed defense counsel to discuss reasonable care in the context of the situation, compared the snowdrift McFarland encountered to a deer running into the road, and instructed the jury on negligence and reasonable care. The jury was able to assess whether McFarland's actions were reasonable under the circumstances. Thus, even if the district court erred in not giving the emergency rule instruction, any error was harmless and does not require a new trial.

### III.

Finally, McFarland argues that he is entitled to a new trial because the district court improperly reconciled the special verdict form. The jury found both Daly and McFarland negligent (Questions 1 and 3), but found that only McFarland's negligence was a direct cause of the accident (Questions 2 and 4). In response to Question 5, however, the jury apportioned fault "as a direct cause of the accident" 70% to McFarland and 30% to Daly.[5] The district

---

5. The special verdict form read as follows:

1. Was Defendant Zachary John McFarland negligent in the operation of his snowmobile at the time of the accident on January 20, 2007? YES.
2. *If your answer to Question 1 was "Yes," then answer this question:* Was such negligence by Zachary John McFarland a direct cause of the accident on January 20, 2007? YES.
3. Was Plaintiff Christopher John Daly negligent in the operation of his snowmobile at the time of the accident on January 20, 2007? YES.
4. *If your answer to Question 3 was "Yes," then answer this question:* Was this negligence by Christopher John Daly a direct cause of the accident on January 20, 2007? NO.

*If you answered "Yes" to either or both of questions 1 and 3, then answer question 5:*
5. Taking all of the negligence that contributed as a direct cause of the accident as 100%, what percentage of negligence do you attribute to:
 Zachary John McFarland: 70%
 Christopher John Daly: 30%
**You must answer the following two questions regardless of your previous answers on this Special Verdict Form.**
6. What sum of money, if any, will fairly and adequately compensate Christopher John Daly for damages directly caused by the accident, up to the time of the verdict, for:
 a. Past pain, disability, and emotional distress: $50,000.00
 b. Past loss of earnings/earning capacity: $21,832.40
 c. Past medical expenses: $90,801.10

court reconciled the special verdict answers as follows:

> The Jury returned its Special Verdict annexed hereto as Exhibit 1, finding [McFarland] negligent and that his negligence was a direct cause of injury to [Daly]. [Daly] was found negligent, but his negligence was not a direct cause of his injuries. Accordingly, although the jury completed responses to the comparative fault question, as instructed by the Special Verdict form, the Court finds that no fault comparison was legally required or necessary and that no fault reduction would be appropriate.

In other words, the district court concluded that because the jury had determined that Daly's negligence was not a direct cause of the accident in Question 4, the answer to Question 5 apportioning 30% of fault to Daly was superfluous. McFarland seeks relief in the form of a new trial. We agree with McFarland that the district court abused its discretion in reconciling the directly contradictory jury verdict. But, the remedy of a new trial unfairly prejudices Daly, because the jury found that McFarland was, at a minimum, 70% responsible for the accident. Thus, we order a remittitur. Daly may choose to accept 70% of the damages, or he may choose a new trial. *See Runia v. Marguth Agency, Inc.,* 437 N.W.2d 45, 49–50 (Minn. 1989).

 A district court has an obligation to attempt to reconcile the verdict. *Bigham v. J.C. Penney Co.,* 268 N.W.2d 892, 897 (Minn.1978); *see Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) (discussing the district court's obligation to reconcile jury verdicts). If answers given by a jury on a special verdict form are both inconsistent and irreconcilable, reconciliation by the district court is not necessarily an error of law that justifies a new trial. *See Haugen v. Int'l Transp., Inc.,* 379 N.W.2d 529, 531 (Minn.1986).

 A special verdict form should be read to effectuate the intent of the jury. "[A] special verdict form is to be liberally construed to give effect to the intention of the jury and on appellate review it is the court's responsibility to harmonize all findings if at all possible." *Dunn v. Nat'l Beverage Corp.,* 745 N.W.2d 549, 555 (Minn.2008) (quoting *Kelly v. City of Minneapolis,* 598 N.W.2d 657, 662 (Minn.1999)) (internal quotation marks removed). "The test is whether the answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences." *Reese v. Henke,* 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967). A jury's answer to a reconcilable "special verdict form can be set aside only if no reasonable mind could find as did the jury." *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724, 734 (Minn.1997).

 Typically, district courts facing a potentially inconsistent verdict have two options in construing the form: (1) "exercising their own powers of interpretation"; or (2) "in effect partially directing a verdict, where it is deemed that a jury's response must be changed as a matter of law." *Meinke v. Lewandowski,* 306 Minn. 406, 412, 237 N.W.2d 387, 391–92 (1975).

---

7. What sum of money, if any, will fairly and adequately compensate [ ] Christopher John Daly for damages reasonably certain to occur in the future, directly caused by the accident for:

 a. Future pain, disability, emotional distress: $100,000.00

 b. Loss of future earnings/earning capacity: $60,000.00

 c. Future medical expenses: $120,000.00

If the district court follows the first option, we give broad discretion to any interpretive choice made by the district court. "If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn. 1984). If the court chooses the second option, the court does so pursuant to the same authority by which it may grant judgment notwithstanding the verdict: when the evidence requires the change as a matter of law. *Orwick v. Belshan*, 304 Minn. 338, 343, 231 N.W.2d 90, 94 (1975); *see Reese*, 277 Minn. at 156, 152 N.W.2d at 67 (holding that, although normally causation is a fact issue for the jury, when a jury has found negligence, the court may hold, as a matter of law, that the negligence was a cause of the injury when the court believes that reasonable minds could come to no other conclusion).

McFarland argues that the district court erred by changing the jury's answers on the special verdict form because the answers to Questions 4 and 5 are directly contradictory. (Question 4 says that Daly's negligence was not a direct cause of the accident while Question 5 says that 30% of the accident was directly caused by Daly's negligence.) McFarland further argues that because these two answers are inconsistent, the court committed error as a matter of law, and he is entitled to a new trial. Daly counters that the district court properly reconciled the jury's answers on the special verdict form, given its strong obligation to give effect to the intention of the jury.[6] In reaching that conclusion, Daly contends that Questions 1–4 are consistent when read together, and that the

jury had already determined that Daly's negligence was not a direct cause of the accident. Thus, one can read Question 5 as apportioning "negligence" rather than "direct cause."

However one reads the special verdict form, the jury unquestionably believed McFarland to be either 70% or 100% responsible for the accident. Under no circumstance could the special verdict answers be interpreted to mean that McFarland was not causally negligent. Thus, the relevant question is whether the district court committed error as a matter of law by assigning 100% of the fault to McFarland.

There is some support for Daly's position. During the jury instructions, when discussing Question 5, the district court said: "Question 5, if they were both negligent or—it doesn't matter—what amount of negligence of 100 percent do you attribute to the defendant and the plaintiff?" As a result, the district court concluded that the jury had apportioned fault but not causation. But a conclusion that the jury may not have understood the proffered instructions is insufficient to counter the plain language of the answers given by the jury on the special verdict form. Here, the jury answered one question by concluding that Daly was not causally negligent, and then concluded *in the very next question*, which it was directed to answer by the district court, that Daly was causally negligent for 30% of the accident. These answers are directly contradictory and not subject to reconciliation. The district court thus abused its discre-

---

6. Daly also argues that the court of appeals erred by reviewing the special verdict form in the first place, because McFarland failed to object to—and in fact signed off on—the form at trial. However, Daly did not petition for review on this issue, and we typically do not review issues not raised in the petition. *Nw. Racquet Swim & Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 613 n. 1 (Minn. 1995). Thus, we do not consider this argument.

tion in reconciling the special verdict form.[7]

■■■ Generally, the remedy for improper special verdict form reconciliation is a new trial. *See* Minn. R. Civ. P. 59.01; *see also Haugen*, 379 N.W.2d at 531–32. In this instance, however, we do not believe that a new trial on the amount of damages is warranted by the verdict's inconsistency. While it is true that the jury contradicted itself on the determination of Daly's causal negligence, it plainly believed that McFarland was either 100% at fault or 70% at fault for directly causing the accident. In fashioning a remedy in these circumstances, a court may consider all options authorized under Minn. R. Civ. P. 59.01, including a remittitur. *See Rosenbloom v. Flygare*, 501 N.W.2d 597, 602 (Minn.1993) (ordering remittitur in lieu of a new trial on damages when evidence did not support punitive damage award); *Runia*, 437 N.W.2d at 49–50 (noting that either " 'the trial court or this court may grant a new trial ... and make it conditional upon the party against whom the motion is directed consenting to a reduction' " in the verdict) (emphasis omitted) (quoting *Podgorski v. Kerwin*, 147 Minn. 103, 104, 179 N.W. 679, 680 (1920)). A remittitur in this instance would allow Daly to choose between entry of judgment for 70% of the original jury verdict (amounting to $309,843.45) or a new trial. *See Runia*, 437 N.W.2d at 50 (holding that all proposed remittiturs must allow the relevant party to choose between reduced damages and a new trial). Because the jury found McFarland to be at least 70%

causally negligent for the accident, we thus remand to the district court with directions to enter a remittitur awarding Daly $309,843.45, and in the event such a remittitur is rejected by Daly, grant a new trial on liability issues. *Accord State v. Dangers*, 312 N.W.2d 668, 673 (Minn.1981).

Affirmed in part, reversed in part, and remanded.

GILDEA, C.J., took no part in the consideration or decision of this case.

ANDERSON, PAUL H., Justice (concurring in part, dissenting in part).

I agree with the majority that the doctrine of primary assumption of risk does not preclude liability for negligent operation of a snowmobile. I also agree with the majority that the district court did not abuse its discretion in declining to instruct the jury on the emergency rule. But, I disagree with the majority's conclusion on the issue of the district court's ability to reconcile the jury's special verdict form. Because I would hold that the district court did not abuse its discretion in reconciling the jury's answers on its special verdict form, I dissent in part.

McFarland argues that he is entitled to a new trial because the district court improperly reconciled the jury's special verdict form. The jury found both Daly and McFarland negligent (Questions 1 and 3), and that only McFarland's negligence was a direct cause of the accident (Questions 2 and 4). But, in response to Question 5, the jury apportioned fault "as a direct cause of the accident." The jury apportioned 70

---

**7.** As we noted in both *Orwick* and *Meinke*, this situation could have been avoided if the district court had taken either of two actions: (1) properly preparing the special verdict form so that the jury did not need to answer Question 5 unless it had already determined both parties were causally negligent; or (2) sending the jury back to the deliberation room to eliminate the inconsistencies. *Cf. Meinke*, 306 Minn. at 412, 237 N.W.2d at 392; *Orwick*, 304 Minn. at 345, 231 N.W.2d at 95. Here, the court undertook neither the precaution of preparing a clear jury form nor the post-verdict solution of further jury deliberation.

percent of the fault to McFarland and 30 percent to Daly.[1] The court reconciled the special verdict answers as follows:

> The Jury returned its Special Verdict annexed hereto as Exhibit 1, finding the Defendant negligent and that his negligence was a direct cause of· injury. to Plaintiff. Plaintiff was found negligent, but his negligence was not a direct cause of his injuries. Accordingly, although the jury completed responses to the comparative fault question, as instructed by the Special Verdict form, the Court finds that no fault comparison was legally required or necessary and that no fault reduction would be appropriate.

In other words, the court concluded that because the jury in its answer to Question 4 had determined Daly's negligence was not a direct cause of the accident, the jury's answer to Question 5 apportioning 30 percent of fault to Daly was superfluous.

We have said that district courts have an obligation to attempt to reconcile an inconsistent jury verdict because of Seventh Amendment concerns. *Bigham v. J.C. Penney Co.*, 268 N.W.2d 892, 897 (Minn.1978). More specifically, we have said the Seventh Amendment "requires that '[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" *Id.* at 897 (quoting *A. & G. Stevedores v. Ellerman Lines*, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962)). We have also said "'a special verdict form is to be liberally construed to give effect to the intention of the, jury and on appellate review it is the court's responsibility to harmonize all findings if at all possible.'" *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn.2008) (quoting *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 662 (Minn.1999)). "The test is wheth-

er the answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences." *Reese v. Henke*, 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967). A jury's answer to a reconcilable "special verdict form can be set aside only if no reasonable mind could find as did the jury." *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 734 (Minn. 1997). Thus, whenever possible, a special verdict form should be read liberally by the court to effectuate the intent of the jury. ·

Typically, district courts facing a potentially inconsistent verdict form have two options when construing the form: (1) "exercising their own powers of interpretation"; or (2) "in effect partially directing a verdict, where it is deemed that a jury's response must be changed as a matter of law." *Meinke v. Lewandowski*, 306 Minn. 406, 412, 237 N.W.2d 387, 391–92 (1975) (internal citations omitted). If a court follows the first option, we give wide discretion to any interpretive choice made by the court. We have made clear "[i]f the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). If the court chooses the second option, the court does so pursuant to the same authority by which it may grant judgment notwithstanding the verdict-when the evidence requires the change as a matter of law. *Orwick v. Belshan*, 304 Minn. 338, 343, 231 N.W.2d 90, 94 (1975); *see Reese,* 277 Minn. at 156, 152 N.W.2d at 67. In *Reese*, we held that even though causation is normally a fact issue for the jury, when a jury has found negligence, the court may hold, as a matter of law, that the negligence was a cause of the injury when the court believes that reasonable minds could

---

1. The special verdict form is set out in detail as part of the majority's opinion.

come to no other conclusion. 277 Minn. at 156, 152 N.W.2d at 67.

McFarland argues that the district court erred by changing the jury's answers on the special verdict form because the answers to Questions 4 and 5 are directly contradictory. He asserts that Question 4 says that Daly's negligence was not a direct cause of the accident while Question 5 says that 30 percent of the accident was directly caused by Daly's negligence. McFarland claims that because the jury's answers to Questions 4 and 5 are inconsistent, the court committed error as a matter of law, and he is entitled to a new trial. Daly counters that the court properly reconciled the jury's answers on the special verdict form, given the court's strong obligation to give effect to the intention of the jury. In reaching this conclusion, Daly contends the jury's answers to Questions 1 through 4 are consistent when read together, and the jury had already determined that Daly's negligence was not a direct cause of the accident. Thus, Daly asserts that the court can read the jury's answer to Question 5 as apportioning "negligence" rather than determining "direct cause."

I conclude no matter how we read the jury's special verdict form in this case, the jury unquestionably believed McFarland's negligence to be either 70 percent or 100 percent responsible for the accident. Under no circumstance could the special verdict answers be interpreted to mean that McFarland was not causally negligent. Thus, the relevant question is whether the district court committed error as a matter of law by assigning 100 percent of the fault to McFarland.

The district court determined that the jury intended to assign 100 percent of the responsibility for the accident to McFarland. I conclude there is sufficient evidence to support this conclusion. During the giving of the jury instructions, specifically when discussing Question 5, the court said: "Question 5, if they were both negligent or—it doesn't matter—what amount of negligence of 100% do you attribute to the defendant and the plaintiff?" In part based on the directive given by the court itself, the court made its findings of fact that in its answer to Question 5, the jury had apportioned fault but not cause. The court said, "Plaintiff was found negligent, but his negligence was not a direct cause of his injuries." Not only is this finding supported by the record, it is appropriate given our requirement that the district court must reconcile the verdict if at all possible. Thus, I do not believe the court abused its discretion in doing so here.

As we said in *Haugen:*

> [W]here the jury concludes that a defendant was negligent but that the negligence was not a direct cause of plaintiff's injuries . . . determining whether the special verdict answers are inconsistent generally does not involve a question of law. Determining whether an explanation exists that reconciles the answers depends in significant part upon the credibility of witnesses and the probative force and character of the evidence introduced, factors often not adequately portrayed in the record and generally within the discretion of the trial court.

*Haugen,* 379 N.W.2d at 531. Our case law and the record support affirming the conclusion made by the district court—the court which is undoubtedly in the best position to know what question the jury was responding to when it allocated fault. This conclusion is especially so because the court read the jury instructions to the jury and described the manner in which the jury should evaluate the evidence. Therefore, I would conclude the district court did not abuse its discretion in reconciling the jury's special verdict form and would

affirm the denial of McFarland's motion for judgment as a matter of law.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Paul H. Anderson.