*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0038**

James M. Johnson, et al.,
Appellants,

vs.

Princeton Public Utilities Commission,
defendant and third party plaintiff,
Respondent,

vs.

Hydrocon, Inc.,
Third Party Defendant.

**Filed January 4, 2016
Affirmed in part, reversed in part, and remanded
Cleary, Chief Judge**

Mille Lacs County District Court
File No. 48-CV-11-2174

James E. Lindell, Grim Daniel Howland, Lindell & Lavoie, LLP, Minneapolis, Minnesota (for appellants)

Larry D. Espel, Kathryn N. Hibbard, Katherine M. Swenson, Greene Espel PLLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and Randall, Judge.[*]

## UNPUBLISHED OPINION

**CLEARY**, Chief Judge

In this appeal from a judgment entered following a jury trial of appellants James Johnson (Johnson) and Sherri Johnson's negligence claims arising out of an accident at a construction site, appellants assert that the district court erred by (1) denying their motion for judgment as a matter of law on liability; (2) denying their motion for a new trial on damages; (3) granting remittitur of the jury award; and (4) granting respondent Princeton Public Utilities Commission's (the PUC) motion for a collateral-source offset. The PUC cross-appeals, asserting that the district court erred by ruling that appellants' negligence claims were not barred by workers' compensation election of remedies. We affirm in part, reverse in part, and remand for entry of judgment for appellants in the amount of $240,000.

## FACTS

Appellant James Johnson was employed as a construction worker by third-party defendant Hydrocon Inc. during the time relevant to this litigation. Hydrocon is a sewer and water contractor. On August 26, 2009, the PUC and Hydrocon entered a contract under which Hydrocon was to perform construction work on the water main serving an ice arena in Princeton, Minnesota. The PUC agreed to secure an electric utility pole so

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2

that it would not fall while Hydrocon dug a ditch nearby. On the morning of August 31, 2009, employees of the PUC arrived at the construction site in order to secure the pole.

The PUC employees used a digger truck to secure the utility pole and disconnected the utility wires from the pole so it would be out of service during the water main work. Hydrocon was not involved in securing the pole. After multiple employees of the PUC secured the pole, one employee, Thomas Otto, remained at the site all day to supervise the pole.

Johnson operated the compacting machine, a ride-on vehicle that packs loose soil. When the work near the pole was complete, Johnson informed Otto that Hydrocon employees were done working near the pole, at which time Otto released the pole from the digger truck that was securing it. Shortly after Otto drove the digger truck away from the pole, it fell onto the roof of the compacting machine that Johnson was driving.

On February 15, 2011, Johnson reached a settlement regarding this incident with Hydrocon's workers' compensation insurance providers. On September 30, 2011, Johnson and his wife, appellant Sherri Johnson, filed a complaint against the PUC. The PUC filed a third-party complaint against Hydrocon. After a settlement between the PUC and Hydrocon, the Johnsons and PUC went to trial.

After trial, the jury returned a special-verdict form that contained three sets of two questions regarding the parties' negligence. These questions asked (1) if the PUC was negligent and (2) whether the PUC's negligence was a direct cause of Johnson's injuries, (3) if Johnson was negligent and (4) whether Johnson's negligence was a direct cause of his injuries, (5) if Hydrocon was negligent and (6) whether Hydrocon's negligence was a

3

direct cause of Johnson's injuries. The instructions stated that if the jury answered "yes" to two or more of questions two, four, or six, meaning that more than one of the PUC, Johnson, or Hydrocon had been negligent in a way that directly caused Johnson's injuries, only then should they answer question seven regarding apportionment of fault. As to the PUC, the jury found it had been negligent and the negligence was a direct cause of the injury. As to Johnson, the jury found he had been negligent but the negligence was not a direct cause of the injury. As to Hydrocon, the jury found it was not negligent. Despite finding only the PUC's negligence directly caused the injury, the jury went on to answer question seven, apportioning 70% of fault to the PUC and 30% to Johnson. The jury valued damages at $240,000. Despite the inconsistent verdict, the judge dismissed the jury.

On January 17, 2014, the district court ordered a new trial based on the jury's inconsistent special-verdict answers. Appellants objected to this decision. On May 13, the district court offered appellants a remittitur, allowing them "to choose between entry of judgment for seventy percent of the original jury verdict . . . or a new trial." Appellants did not reject remittitur. On July 14, the court entered a judgment for appellants in the amount of $134,085.

Appellants and respondent both made post-trial motions. Appellants argued for judgment as a matter of law (JMOL) that the PUC was the only party causally negligent in the accident for JMOL with respect to damages and, in the alternative, for a new trial on damages. Appellants also moved to vacate the district court's ruling on collateral-

4

source offsets. Respondent sought JMOL as to its liability and filed a motion for fees and costs. All motions were denied. This appeal followed.

## DECISION

**Common enterprise**

We review a district court's denial of a motion for JMOL de novo. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009). However, "we view the evidence in the light most favorable to the prevailing party." *Id.*

> [JMOL] should be granted: only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the [district] court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quotation omitted).

Respondent appeals the district court's denial of its motion for JMOL. It argues that the PUC and Hydrocon were engaged in a common enterprise and therefore, appellants' negligence claims fail as a matter of law. When an employer and a third party are working in "furtherance of a common enterprise," an injured employee must choose between receiving workers' compensation benefits through the employer or pursuing a common-law negligence action against the third party. Minn. Stat. § 176.061, subds. 1, 4 (2014). A common enterprise exists between the employer and the third party where "the masters have joined forces and in effect have put the servants into a common pool." *Gleason v. Geary*, 214 Minn. 499, 511, 8 N.W.2d 808, 814 (1943). This is the case

5

where the following factors are satisfied: "(1) [t]he employers must be engaged on the same project; (2) [t]he employees must be working together (common activity); and (3) [i]n such fashion that they are subject to the same or similar hazards." *McCourtie v. U.S. Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (1958). An employee's recovery on a workers' compensation claim precludes a tort claim based on the same incident against a third party engaged in a common enterprise with the employer. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 893 (Minn. 1996).

The district court determined that the first *McCourtie* factor was satisfied because the PUC employees' sole purpose in being on site that day was to secure the utility pole to allow Hydrocon employees to do their work on the water main. However, it determined that the second and third factors were not satisfied and denied respondent's motion for JMOL.

Respondent argues that because appellants/cross-respondents did not file a notice of related appeal disputing the district court's finding that the first *McCourtie* factor was satisfied, this issue is waived. Because the second and third *McCourtie* factors are not satisfied, we need not reach the issue of whether the first factor was preserved on appeal.

The second factor is whether the employees were engaged in a common activity. Whether this factor is satisfied "is a question that focuses on the functions performed by the employees, not on the goals of their employers." *LeDoux v. M.A. Mortenson Co.*, 835 N.W.2d 20, 22-23 (Minn. App. 2013) (citing *Schleicher v. Lunda Constr. Co.*, 406 N.W.2d 311, 313 (Minn. 1987)). "To be common, the employees' activities must not merely overlap minimally, they must be interdependent." *Id.* at 23 (quotation omitted).

6

The *LeDoux* court held that "[w]orking in the same area at the same time does not alone establish an interdependent common activity since the activities were apparently distinct and apparently could have been performed at different times." *Id.* The mere fact that employees may be working toward a common goal is insufficient. *Schleicher*, 406 N.W.2d at 313.

At the construction site, the PUC and Hydrocon employees largely worked independently of each other. There was no evidence that Hydrocon employees were involved in securing the pole or that employees of the PUC were involved in digging the water-main trench. Additionally, taking the facts in the light most favorable to the judgment, when the pole fell, Otto had driven his truck away from where Johnson was driving the compactor. Johnson was engaged in different work than employees of the PUC with little coordination or communication, and when the accident occurred, there were no employees of the PUC present in the immediate area. Otto—the only employee of the PUC present at the worksite—and Johnson were not engaged in a common activity at the time of the accident.

The third factor is whether the employees were subject to the same or similar workplace hazards. "The same or similar hazards requirement does not demand exposure to identical hazards, only similar hazards." *Olson v. Lyrek*, 582 N.W.2d 582, 584 (Minn. App. 1998), *review denied* (Minn. Oct. 20, 1998). "In determining whether workers are exposed to similar hazards, [courts] make a comparison of the general risks to which workers are exposed as a result of the tasks being performed." *Id.*

In *Olson*, a foreman was injured while laying pipe in a trench that was simultaneously being excavated by a backhoe operator. *Id.* The operator negligently drove the backhoe into the trench, landing on the foreman and injuring both workers. *Id.* Despite the fact that the workers were injured due to the same action, the court found that the third *McCourtie* factor was not satisfied because "the general risks facing [the backhoe operator] were fundamentally different from the risks facing [the foreman] because they were performing separate tasks." *Id.* The risks were not the same because the foreman and operator "did not use the same equipment, nor did they work in the same physical areas. [The foreman] was down in the trench and [the operator] was sitting in an enclosed cab several feet above the trench." *Id.*

The facts in this case mirror *Olson*. Hydrocon employees had very different tasks than the PUC employees. They used different equipment and worked in different spaces. As the district court noted, the general risks facing Hydrocon employees were "trench cave-ins" and other dangers associated with working in a trench, whereas the PUC employees "were subject to the risk of electric shock from disconnecting and reconnecting electrical service to the utility pole." Respondent's argument that this factor is satisfied because employees of the PUC also faced the risk of a falling pole conflicts with *Olson*. In that case, employees of the two companies were actually injured by the same instrument, but the court stated "[t]he focus . . . is not on the instrument that caused the injury." *Olson*, 582 N.W.2d at 584. Instead the focus is on the general risks of the tasks performed. *Id.* Under *Olson*, this third *McCourtie* factor is not satisfied where there is only small overlap between the risks faced by the two groups of employees, even

8

where that overlapping risk is what actually causes the harm. The district court correctly concluded that the general risks were not common among Hydrocon and employees of the PUC.

Employees of the PUC and Hydrocon were not engaged in a common activity and did not face similar hazards. The district court did not err in denying respondent's motion for JMOL on the issue of common enterprise.

**New trial on damages**

Appellants appeal the district court's decision denying a motion for a new trial on damages. "We review a district court's new trial decision under an abuse of discretion standard." *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 892 (Minn. 2010). An appellate court "will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Navarre v. S. Wash. Cnty. Schs.*, 652 N.W.2d 9, 21 (Minn. 2002) (quotations omitted).

First, appellants argue that the district court incorrectly permitted respondent to cross-examine Johnson regarding a previous injury settlement. "The jury shall not be informed of the existence of collateral sources or any future benefits which may or may not be payable to the plaintiff." Minn. Stat. § 548.251, subd. 5 (2014). However, such evidence may be admitted "when a plaintiff, through either the use of misleading statements or outright false statements, falsely conveys to the jury that he or she is destitute or in dire financial straits." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn. 1997).

9

Appellants presented direct testimony that appellant was unable to sign up for college courses because "[h]e doesn't have the money." On direct examination, Johnson stated that he hoped to enroll in a college program but had been unable to. The court found that "the general tenor of [Johnson's] testimony suggested that finances had prevented him" from enrolling in college, and that testimony presented by appellants "painted an unnecessarily dire picture of the Johnson family's financial condition." The evidence provides support for the conclusion that Johnson was conveying to the jury that financial struggles resulting from the accident prevented him from mitigating damages by pursuing a degree. The district court determined that appellants had opened the door to collateral-source evidence through its direct evidence. This determination was not an abuse of discretion.

The district court also did not abuse its discretion by excluding evidence of a settlement between the PUC and Hydrocon. Evidence of accepting "valuable consideration in compromising . . . a claim which was disputed as to either validity or amount, is not admissible to prove liability." Minn. R. Evid. 408. Appellants argue that the claim settled between the PUC and Hydrocon was not disputed and thus rule 408 does not apply. However, the liability release agreed to by the PUC and Hydrocon stated the payment was made "to compromise a disputed and contested claim." The decision to exclude evidence of the settlement was not an abuse of discretion.

Finally, appellant argues that the district court erred by not granting a new trial based on the jury's decision to award no damages for past medical expenses, future bodily and mental harm, loss of future earning capacity, or loss of consortium.

10

"Generally, a new trial on damages will be granted only where the verdict is so inadequate or excessive that it could only have been rendered on account of passion or prejudice." *Rush v. Jostock*, 710 N.W.2d 570, 577 (Minn. App. 2006) (quotation omitted), *review denied* (Minn. May 24, 2006). "A trial court has the broadest possible discretion to determine whether a new trial should be granted based on an inadequate award of damages." *Id.* This decision should not be reversed "absent a clear abuse of that discretion and the existence of the most unusual circumstances." *Pulkrabek v. Johnson*, 418 N.W.2d 514, 516 (Minn. App. 1988) (quotation omitted), *review denied* (Minn. May 4, 1988).

As to past and future medical expenses, appellants argue that they were entitled to damages as a matter of law because "there was no dispute regarding the past healthcare expenses attributable to [Johnson's] cervical surgery and treatment." However, there was evidence presented that Johnson had a preexisting cervical injury. In 2003, Johnson was diagnosed with "degenerative disc disease of the cervical spine." Respondent's medical expert testified that the 2009 worksite accident had aggravated this preexisting condition. The district court held that the jury could have concluded that "the accident was merely a minor factor that hastened an already inevitable surgery." Under this understanding of the evidence, the jury could reasonably find that the past healthcare expenses and the future bodily and mental harm were not causally attributable to respondent's actions but rather to the preexisting injury.

Respondent also presented evidence that Johnson's loss of future earning capacity was not attributable to the accident. Respondent's medical expert testified that continued

11

pain in Johnson's neck was attributable to his preexisting condition, not the accident. Taking the evidence in the light most favorable to the verdict, the jury could have credited this testimony and concluded that any reduction in future earning capacity was not attributable to respondent's actions. Similarly, if the jury credited this testimony, it could reasonably conclude that any loss of consortium to Sherri Johnson was not attributable to respondent's actions. Taken in the light most favorable to the verdict, there is evidence to support the conclusion that all of the damages appellants challenge on appeal were not attributable to the accident. The court did not abuse its discretion by denying appellants' motion for a new trial.

**Collateral-source offset**

Appellants argue that the district court erred by hearing respondent's untimely motion and granting respondent a $48,450 collateral-source offset. Respondent argues that the district court erred by not granting a greater collateral-source offset. When reviewing a district court's decision on collateral-source offsets, which is a mixed question of law and fact, "we will correct erroneous applications of law, but accord the [district] court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." *Graff v. Robert M. Swendra Agency, Inc.,* 776 N.W.2d 744, 752 (Minn. App. 2009) (alteration in original) (quotation omitted) *aff'd*, 800 N.W.2d 112 (Minn. 2011).

Minnesota law allows a party who has been found liable for injury or disability to seek a reduction in the jury award for compensation that the plaintiff has already obtained from collateral sources. Minn. Stat. § 548.251 (2014). The statute defines "collateral

sources," in relevant part, as "payments related to the injury or disability in question" to the plaintiff up to the date of the verdict based on "a federal, state or local . . . Workers' Compensation Act." *Id.*, subd. 1. If the court finds that the injured party has received payment from collateral sources or that such sources are available to the injured party, it must reduce the jury award by the collateral-source amount. *Id.*, subd. 3(a). The purpose of the statute is to prevent double recovery by the plaintiff. *Heine v. Simon*, 702 N.W.2d 752, 764 (Minn. 2005).

Appellants argue that the district court erred by hearing and granting the PUC's motion for collateral-source offsets because the motion was untimely. Minnesota law states that "when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources." Minn. Stat. § 548.251, subd. 2. "The filing of a district court's order for judgment pursuant to a jury's special verdict triggers the time to file a motion for determination of collateral sources." *Braginsky v. State Farm Mut. Auto. Ins. Co.*, 624 N.W.2d 789, 795-96 (Minn. App. 2001).

Here, respondent made its collateral-source motion on October 29, 2013, while the entry of judgment did not occur until July 14, 2014. Under the statute, respondent did not file its motion "within ten days of entry of the verdict," but rather over eight months before entry of the verdict. Respondent did not follow the collateral-source statute and the district court abused its discretion by granting the untimely motion. Because it did not make a timely motion, the PUC is not entitled to a collateral-source offset.

13

**Remittitur**

At the conclusion of trial, the jury gave conflicting answers on the special-verdict form. The jury indicated in response to question four that Johnson's negligence was not a direct cause of his injury but, contrary to instructions, answered question seven, apportioning Johnson 30% of the fault for the injury and the PUC 70% of the fault. After failing to ask the jury to reconcile the responses before dismissing it, the trial court offered appellants the choice to accept the court's entry of a remittitur awarding appellants 70% of the original verdict, or to reject the remittitur, in which case the court would hold a new trial. Appellants argue that the district court should have entered a verdict for the full amount of the jury award because, under the circumstances, the jury should not have answered question seven.

"A trial court has broad discretion to liberally construe an inconsistent verdict to effect the intention of the jury and to harmonize answers if possible." *Hampton Bank v. River City Yachts, Inc.,* 528 N.W.2d 880, 892 (Minn. App. 1995) (quotation omitted), *review denied* (Minn. Apr. 27, 1995). However, "[a]ppellate courts also may direct that one of the answers be changed as a matter of law." *Bogut v. Jannetta*, 410 N.W.2d 451, 454 (Minn. App. 1987).

In *Daly v. McFarland,* the supreme court reversed a district court's decision not to grant remittitur where the jury's answers to the special-verdict form stated that the plaintiff's negligence had not directly caused the accident, but nonetheless apportioned fault to the plaintiff. 812 N.W.2d 113, 118-19 (Minn. 2012). In that case, the jury had been instructed to answer the apportionment-of-fault question regardless of how it

14

answered the causation question. *Id.* at 126. The supreme court reasoned that, because the jury's answers conflicted on two questions that the court had instructed them to answer, the district court abused its discretion by ignoring the jury's answer to the apportionment question and finding the plaintiff had no causal negligence. *Id.* at 126-27.

In this case, the jury was instructed that it should only answer question seven regarding apportionment of fault if it answered "yes" to two or more of questions two, four, or six. Of these, it answered "yes" only to question two. Unlike in *Daly*, the district court in this case did not need to reconcile two required jury findings that conflicted. The jury was instructed not to answer question seven under these circumstances, and it should not have done so. Because the jury's answers on questions one through six meant that it was not to answer question seven, any answer to that question has no legal effect. *See Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 28 (Minn. 1982) (stating that jury "instructions [become] the law of the case"). The district court abused its discretion by reducing appellants' damages based on this answer, which had no effect as a matter of law. The remittitur must be reversed, and this case is remanded for entry of judgment for the full amount of the jury verdict, $240,000.

**Affirmed in part, reversed in part, and remanded.**

15