Kari RENSWICK, Respondent,

v.

Jason WENZEL, Appellant.

No. A11–1719.

Court of Appeals of Minnesota.

July 30, 2012.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, and Phillip P. Hansen, Hansen Law Office, Ltd., Winona, MN, for respondent.

Ken D. Schueler, Hilary R. Stonelake–Curtis, Dunlap & Seeger, P.A., Rochester, MN, for appellant.

Paul D. Peterson, Lori L. Barton, Harper & Peterson, P.L.L.C., Woodbury, MN,

for amicus curiae The Minnesota Association for Justice.

Considered and decided by ROSS, Presiding Judge; WRIGHT, Judge; and COLLINS, Judge.*

## OPINION

ROSS, Judge.

New Year's Eve party guest Kari Renswick tumbled down the stairs into Jason Wenzel's basement, breaking both her wrists. She sued Wenzel for negligence. The question at trial was the reason for Renswick's fall; Wenzel asserted that the fall resulted from Renswick's being under the influence of drugs and alcohol, while Renswick asserted that it resulted from Wenzel's negligent failure to adequately light the stairway landing or to warn her about its dangerous design. The jury found them equally negligent and the district court awarded Renswick damages accordingly. Wenzel unsuccessfully moved the district court to order judgment in his favor or a new trial. We affirm the district court's judgment because primary assumption of the risk does not apply to eliminate Wenzel's duty of care; because the evidence supports the negligence finding and damages award; because no harm resulted from the district court's alleged error of failing to instruct the jury as to negligence per se; because the dangerous nature of the entryway in relation to the stairway was not open and obvious; and because Minnesota Statutes section 548.251 (2010) excepts Medicare payments and negotiated discounts from constituting a collateral-source offset.

## FACTS

Jason Wenzel hosted a small, after-dark 2008 New Year's Eve party in his garage.

Wenzel's garage has no bathroom. It is detached from Wenzel's Winona home. Reveler Kari Renswick left the garage to go into the house to use the bathroom. Renswick fell down the basement stairs almost instantly after she entered the home's rear door.

A 3–foot by 3–foot entryway floor just inside the home's rear door leads both immediately to the kitchen (to the right after entering) or immediately to the basement stairs (forward after entering). An interior door separates the entryway from the kitchen. Another interior door previously separated the entryway from the basement stairs, but it had been removed, leaving only the jamb, hinges, and open access to the stairs.

The rear entryway is not illuminated by an interior overhead light. It receives some light from the kitchen, but not when the kitchen door is closed. It also receives some light from an exterior lamp mounted above the exterior door and from a floodlight mounted on the garage and directed toward the house. Earlier on the night of the party, Wenzel's wife, Chelsea, had gone from the garage to the house and then returned to the garage, closing the kitchen door behind her. This was consistent with her practice; the Wenzels kept the kitchen door closed for their children's safety. The exterior lights over the rear door and on the garage were on.

Renswick had ingested medication, illegal drugs, and alcohol before her fall. She had taken various prescribed medicine, including Acebutolol, Baclofen, Citalopram, Hydrocodone, Fentanyl, and Provigil. She had smoked marijuana before the party. And she consumed one and a half cans of beer at the party.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Renswick announced that she needed to use the bathroom. Wenzel and his wife claimed not to have heard the announcement. Renswick had previously visited the Wenzel home and knew where the bathroom was located. She walked to the home's rear, and she opened the storm door and exterior door. She stepped onto the entryway floor with her right foot. Once inside, Renswick had to rely only on the exterior lights, which allowed her to see the knob to the kitchen door on her right. She needed to pass through the kitchen to reach the bathroom.

Renswick never got to the bathroom. With her right foot on the entryway floor, Renswick reached for the doorknob. At the same time, she brought her left foot around into the entryway. But her left foot did not land squarely on the entryway floor; instead, it partially or completely entered the stairway. Renswick lost her balance and tumbled down the stairs into the basement.

The fall seriously injured Renswick. She was knocked unconscious after her head struck a concrete wall at the bottom of the stairs. After she awoke, she crawled up the stairs using only her knees and elbows. She struggled out to the garage and pounded on the door. Chelsea and another party guest drove Renswick to an emergency room in Winona and she was transferred to a hospital in La Crosse, Wisconsin. X-rays revealed that both her arms were broken just above her wrists, and she suffered ligament and tendon tears. The break in her left arm appeared the worst, leaving the bones "grossly displaced" and her arm "bent" with the break extending into her wrist joint. Dr. Charles Hayden realigned the bones and placed splints on both wrists. Within two weeks he operated on both wrists, inserting plates, screws, and pins to remain permanently. One of the plates in her left arm later had to be removed because of chronic pain. Three months after the fall, on March 11, 2009, Dr. Hayden cleared Renswick to work.

The emergency room visit immediately after the fall revealed that Renswick had ingested various chemicals. Renswick provided a urine sample that tested positive for alcohol, methamphetamine, amphetamine, and marijuana.

Renswick sued Wenzel, alleging that his negligence caused her serious and permanent injuries. She claimed that he negligently failed to maintain a safe entryway using gates and lighting or to warn her of the dangerous proximity of the entry and basement stairs. Wenzel answered by asserting that Renswick's own negligence caused her injuries and that she had assumed the risk of injury by failing to act safely. He unsuccessfully moved the district court for summary judgment and to exclude Renswick's claim for future medical expenses and future pain and suffering.

At trial, a toxicologist opined on Wenzel's behalf that Renswick's combination of drugs and alcohol impaired her thinking and balance. Renswick introduced testimony that the Wenzels usually kept the kitchen door closed specifically because the basement stairs were dangerous to their children. Renswick also testified that, the moment she announced her fall, Wenzel turned to his wife and asked if she had left the kitchen light on or the kitchen door open, and she responded that she had not.

The jury found Renswick and Wenzel each 50–percent negligent. It valued Renswick's resulting injuries at $190,313, as follows: $48,813 for medical expenses; $1,500 for lost wages; $10,000 for embarrassment and emotional distress; $40,000 for past pain and disability; and $90,000 for future pain and disability. The district court apportioned the damages and awarded Renswick $95,156 based on the jury's finding of 50–percent comparative fault.

After trial, Wenzel unsuccessfully moved the district court to enter judgment in his favor as a matter of law on various liability theories, or to reduce the damages by the amount of medical benefits that Renswick received from Medicare based on Minnesota's collateral-source statute. The district court entered judgment in Renswick's favor.

Wenzel appeals.

## ISSUES

I. Is Wenzel entitled to a new trial because the evidence does not support an award of damages for future pain and disability; or because Renswick primarily assumed the risk of injury; or because the district court failed to instruct the jury that using marijuana and methamphetamine constitutes negligence per se?

II. Is Wenzel entitled to judgment as a matter of law because the evidence does not support an award of damages for future pain and disability; or because Renswick primarily assumed the risk of injury; or because Wenzel did not owe a duty of care to Renswick because the dangerous condition of the entryway and stairs was open and obvious; or because Renswick failed to identify a negligent act by Wenzel?

III. Did the district court err by miscalculating the statutory collateral-source rule as applied to Renswick's Medicare benefits in the form of Medicare payments and Medicare-negotiated reductions in medical bills?

## ANALYSIS

### I

Wenzel argues that he is entitled to a new trial for three reasons, none of which persuades us to reverse. He asserts that the evidence does not support an award of damages for future pain and disability, that Renswick primarily assumed the risk of injury, and that the district court improperly failed to instruct the jury that using marijuana and methamphetamine constitutes negligence per se.

A defendant is entitled to a new trial on a number of fairness-impeding mistakes. For example, he may receive a new trial based on a trial irregularity, an abuse of judicial discretion, an excessive damages award arising from juror passion or prejudice, a legal error, or a jury verdict unjustified on the evidence or the controlling law. Minn. R. Civ. P. 59.01. We review a district court's denial of a motion for a new trial for an abuse of discretion. *Stoebe v. Merastar Ins. Co.*, 554 N.W.2d 733, 735 (Minn.1996). We give due deference to the jury in its fact-finding role, refusing to set aside a jury verdict unless it is "manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Raze v. Mueller*, 587 N.W.2d 645, 648 (Minn.1999) (quotation omitted). Wenzel's arguments cannot prevail under this standard.

### *Future Pain and Disability*

██ Wenzel argues that the district court abused its discretion by denying his motion in limine to exclude Renswick's claim for future pain and disability. A plaintiff is entitled to damages for future pain or disability only by proving the injury to a reasonable certainty by a preponderance of evidence. *Pietrzak v. Eggen*, 295 N.W.2d 504, 507 (Minn.1980). This prevents recovery for damages that are "remote, speculative, or conjectural." *Id.*

██ We are not persuaded by Wenzel's contention that Renswick failed to

provide sufficient evidence of future pain and disability. He emphasizes that Dr. Hayden, Renswick's orthopedic surgeon, declined to offer an opinion on whether Renswick would have any future physical restrictions by stating only that "she may or she may not" have future pain and that he was not offering "an opinion one way or the other" about it. And a sufficiently experienced medical expert's examination-based opinion about future pain can carry the burden of proof. *Derrick v. St. Paul City Ry. Co.*, 252 Minn. 102, 108, 89 N.W.2d 629, 634 (1958). But expert medical testimony is not the only means to prove future damages or permanent injury. *Pagett v. N. Elec. Supply Co.*, 283 Minn. 228, 238, 167 N.W.2d 58, 65 (1969). They may also be proven by evidence that an injured plaintiff "is not fully recovered at the time of trial." *Id.* The district court held that the jury's verdict was supported by Renswick's testimony that, at trial, she still suffered pain. The holding has factual support, as Renswick testified that she continued to take oxycodone pain-medication for wrist pain. We recognize that a different jury might not have been persuaded by this testimony, but based on the settled caselaw, the testimony is enough to sustain a finding of future pain.

### Primary Assumption of the Risk

█ Wenzel argues that the district court improperly denied his motion for a new trial because the jury should have been instructed on his affirmative defense of primary assumption of the risk. The decision to deny a motion for a new trial in the face of a claimed erroneous jury instruction rests within the district court's discretion, and we will not reverse its decision unless it reflects a clear abuse of that discretion. *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 625 (Minn. 2012).

██ Two types of assumption of the risk exist—primary and secondary. One relieves the defendant of his duty of care and the other does not. Primary assumption of the risk bars a plaintiff's recovery. *Daly v. McFarland*, 812 N.W.2d 113, 119 (Minn.2012). It applies when the parties voluntarily enter into a relationship in which the plaintiff assumes well-known, incidental risks, and when this happens, the defendant has no duty to protect the plaintiff from these risks. *Id.* A finding of primary assumption of the risk is a rare thing in Minnesota. This is because the doctrine applies only in limited circumstances. *Id.* at 120. By contrast, secondary assumption of the risk is a form of contributory negligence that applies when the defendant "has created a hazard that is known, appreciated, and voluntarily encountered by the plaintiff, but the defendant is not relieved of his duty of care with respect to the hazard." *Schneider ex rel. Schneider v. Erickson*, 654 N.W.2d 144, 148 (Minn.App.2002) (quotation omitted).

█ The district court here declined to instruct the jury on primary assumption of the risk or to ask for a special-verdict finding on it. Wenzel relies on *Wagner v. Thomas J. Obert Enters.*, 396 N.W.2d 223 (Minn.1986), and argues that this constitutes an abuse of discretion. We are far from persuaded. Like most other cases applying primary assumption of the risk, *Wagner* involved a sporting event that has inherently dangerous features apparent to anyone on their common-sense assessment of risk. For example, *Wagner* involved a patron's fall at a roller-skating rink. *Id.* at 225. The district court there acted within its discretion and properly submitted the question of primary assumption of the risk to the jury because one of the two conflicting versions of how the plaintiff's fall occurred was that the plaintiff simply lost her balance, and losing one's balance is the

sort of risk inherent in roller skating that relieves the rink operator of liability. *See id.* at 226–27.

Wenzel's call for broad application of the doctrine here cannot scale the wall of cases calling for limited application. Citing caselaw involving competitive golf, auto racing, ice skating, and hockey, the supreme court recently summarized, "The doctrine commonly applies to participants and spectators of inherently dangerous sports." *Daly*, 812 N.W.2d at 120. It added that it "is also applied to theories of recovery based on strict products liability theory and strict liability for abnormally dangerous activities." *Id.* at n. 1. Wenzel cites to no authority even suggesting that a district court can, let alone must, apply the doctrine to a reveler's entry into a darkened home known to have a basement. We hold that the district court did not abuse its discretion by refusing to instruct the jury on primary assumption of the risk. It properly instructed the jury on secondary assumption of the risk, which allowed the jury to consider Renswick's comparative negligence without relieving Wenzel of any duty of care.

### Use of Marijuana and Methamphetamine as Negligence Per Se

■■■ Wenzel also argues that the district court abused its discretion when it refused to instruct the jury that Renswick's use of marijuana and methamphetamine constituted negligence per se. Negligence per se substitutes a statutory standard of care for that of an ordinarily prudent person, so that violation of the statute is conclusive evidence of duty and breach. *Gradjelick v. Hance*, 646 N.W.2d 225, 231 n. 3 (Minn.2002). The violation of a statute "gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to protect."

*Alderman's Inc. v. Shanks*, 536 N.W.2d 4, 8 (Minn.1995) (quotation omitted). Wenzel argues that marijuana and methamphetamine are controlled substances for which possession is a crime, *see* Minn.Stat. §§ 152.02 (2010), 152.021–.025 (2010), and he contends that the purpose of the controlled-substances statutes is to protect persons, like Renswick, from harm, such as falling down stairs, that can be associated with consuming illegal drugs. On this basis, he contends that Renswick owed herself a duty of care, and breached it as a matter of law.

■■■ We need not decide the merits of Wenzel's doubtful argument that a person is per se negligent by consuming drugs and walking into a darkened house. The argument is moot and any error harmless. We overlook harmless errors that do not affect a party's substantial rights. Minn. R. Civ. P. 61. By seeking a new trial on his negligence-per-se argument, Wenzel effectively asks us to order a new trial at which the jury must receive an instruction to do what the jury already did without the instruction. The jury in fact found Renswick negligent after Wenzel argued that it should deem Renswick negligent specifically because she consumed alcohol and drugs and entered the darkened home under their influence. Regardless of whether a jury finds a party negligent based on a per se rule or on its own fact-finding discretion, the effect is the same because a finding of negligence per se does not prohibit the jury from considering comparative negligence. *See Zorgdrager v. State Wide Sales, Inc.*, 489 N.W.2d 281, 284 (Minn.App.1992). So without deciding whether the district court had a basis to instruct the jury on negligence per se, we must reject Wenzel's argument that failure to give the instruction requires reversal.

## II

Wenzel argues that he is entitled to judgment as a matter of law for four reasons: because the evidence does not support an award of damages for future pain and disability; because Renswick assumed the risk of injury; because the open and obvious danger of the stairway and entryway configuration relieved him of any duty of care to Renswick; and because Renswick did not prove that he committed a negligent act. The arguments are not persuasive.

The district court may grant judgment as a matter of law if, during a jury trial, "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Minn. R. Civ. P. 50.01. But judgment under that standard is inappropriate if reasonable jurors might differ on the finding. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009). We review a district court's decision on a motion for judgment as a matter of law de novo, relying on the evidence construed in the light most favorable to the prevailing party. *Id.* We will affirm if the record contains evidence that reasonably supports the verdict. *Kaiser–Bauer v. Mullan*, 609 N.W.2d 905, 910 (Minn. App.2000), *review denied* (Minn. July 25, 2000).

### Future Pain and Disability

Wenzel argues that he is entitled to judgment in his favor because Renswick did not establish future pain and disability to a reasonable degree of certainty. For the same reasons that Wenzel's argument on future pain and disability fails to justify a new trial, as already discussed, it also fails to support his claim for judgment as a matter of law.

### Primary Assumption of the Risk

The same is so regarding Wenzel's argument that primary assumption of the risk required judgment in his favor; we have answered the heart of the argument as it applies to the argument for a new trial, and the same answer applies here.

### Open and Obvious Danger

 Wenzel's argument that the district court erred by denying judgment as a matter of law based on the alleged open and obvious danger of the home's rear entry also fails. A plaintiff establishes her negligence claim by proving that (1) a duty of care exists; (2) a breach of that duty occurred; (3) an injury ensued; and (4) the breach of the duty proximately caused the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995). Landowners generally owe entrants to their property a duty of reasonable care for their safety. *Olmanson v. LeSueur Cnty.*, 693 N.W.2d 876, 880 (Minn.2005). This includes the ongoing duty to inspect and maintain the property free of unreasonable risks of harm, and, concerning a dangerous condition discoverable with reasonable effort, the landowner must either repair the condition or warn invited entrants of its existence. *Id.* at 881.

 But a landowner is not always obligated to warn of a danger; if the danger is open or obvious to an invitee, he has no duty to her. *Baber v. Dill*, 531 N.W.2d 493, 495–96 (Minn.1995). Whether a danger is obvious is an objective question rendering irrelevant whether the injured invitee actually noticed it. *Louis v. Louis*, 636 N.W.2d 314, 321 (Minn.2001). The ultimate question is whether "both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* (quotation omitted).

 Applied here, the question becomes whether a reasonable person in Renswick's shoes would have recognized

the condition and the associated risk of entering Wenzel's home. The answer is generally one for the jury, not for the court, because whether a condition presents an open or obvious danger and whether the landowner could anticipate the danger are generally fact questions. *Olmanson,* 693 N.W.2d at 881. The district court submitted to the jury the question of whether the danger of the rear entryway and basement stairway was open and obvious. The jury had ample factual ground to answer the question as it implicitly did. On one hand, the jury knew that a person in Renswick's shoes would have sufficient lighting to see the kitchen doorknob and that she was aware that reaching the bathroom required her to pass through the kitchen. But on the other, it heard testimony that Renswick did not know that the entryway was also the landing to an open basement stairway. We understand that the jury could have reached a different conclusion, but our role on appeal is limited and we are satisfied that the evidence does not render its factual conclusion baseless. We will not substitute our judgment for the jury's on these facts.

### Negligent Act by Wenzel

We similarly cannot agree that the jury had no evidence from which to find Wenzel negligent. Negligence is the failure to exercise the care that persons of ordinary prudence would exercise under similar circumstances. *Domagala v. Rolland,* 805 N.W.2d 14, 22 (Minn.2011). The matter is generally one for the jury, and it is "only in the clearest of cases that the question of negligence becomes one of law." *Block v. Target Stores, Inc.,* 458 N.W.2d 705, 712 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990) (quotation omitted). This is not one of those clear cases in which we will deem the jury's

finding of negligence wrong as a matter of law.

The record has ample evidence to support the jury's negligence finding. It heard evidence that Wenzel and his wife closed the door between the kitchen and the rear entryway to avoid harm to their children. It heard evidence that the entryway was too poorly lit to see the stairs. It heard evidence that Wenzel and his wife questioned each other immediately after the accident about whether one of them had left the kitchen light on and the door open, which would have shed light into the rear entryway. It learned that Wenzel had removed the door that had separated the entryway from the stairs. And it heard that Wenzel was aware of the danger posed by the proximity between the entryway and the stairs. We do not know what particular negligent acts or omissions the jury decided as the basis (or bases) for its finding that Wenzel was negligent. Perhaps it thought Wenzel was negligent by leaving the passage doorless, or failing to install an entryway light, or failing to not affix a gate, or failing to leave the kitchen door open for lighting, or failing to warn his party guests orally or with a sign that the basement stairs are three feet beyond the darkened entryway. But considering the jury's finding of negligence in the light most favorable to the verdict, as we must, we have no ground to reverse the district court's refusal to grant judgment to Wenzel as a matter of law on this question.

Wenzel adds here that Renswick failed to prove that his actions proximately caused her injuries. Proximate causation is again usually a question of fact reserved for the jury. *Vanderweyst v. Langford,* 303 Minn. 575, 576, 228 N.W.2d 271, 272 (Minn.1975). We will not disturb the jury's proximate-cause finding unless it is "manifestly and palpably contrary to the

evidence viewed as a whole and in the light most favorable to the verdict." *Id.* "It is only where the evidence is so clear and conclusive as to leave no room for differences of opinion among reasonable [jurors] that the issue of causation becomes one of law to be decided by the court." *Id.* This is not such a case.

■■■ A party's negligence is the proximate cause of an injury if the negligent act was one that the alleged tortfeasor "ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others" and if his conduct "was a substantial factor in bringing about the injury." *Canada v. McCarthy,* 567 N.W.2d 496, 506 (Minn.1997) (quotation omitted). The jury had a sufficient basis on which to conclude that a reasonable person in Wenzel's shoes would have anticipated that failure to warn about the stairs or to properly light them would likely result in a guest falling down the stairs and that the failure was a substantial factor in Renswick's injury. Again, we do not say that the evidence rendered the verdict of Wenzel's liability necessary, only that it rendered it reasonable and therefore sustainable.

### III

Wenzel's final damages argument arises from the collateral-source statute. He argues that the district court erred by failing to reduce the damages award by the amount that Renswick benefited from Medicare coverage. Particularly, he contends that, to the extent Renswick's medical care costs were covered either by Medicare payments or by Medicare-negotiated reductions, the district court should have reduced the damages award under Minnesota's collateral-source statute. The argument depends on the construction of Minnesota Statutes, section 548.251, subdivision 1(1)–(2) (2010). We review questions of statutory interpretation de novo.

*Krueger v. Zeman Const. Co.,* 781 N.W.2d 858, 861 (Minn.2010).

Wenzel's argument that section 548.251 requires a damages reduction commensurate with Renswick's receipt of Medicare benefits is a question of first impression. If the plain language of a statute is unambiguous, our interpretation should rely exclusively on it, endeavoring to give effect to the legislature's intention. Minn.Stat. § 645.16 (2010). But because our interpretation of section 545.251 today is corroborated by its background, we first provide some context before turning to the language.

Section 548.251, which prevents a plaintiff in a contract or tort action from receiving a double recovery in some situations, is a legislative alteration of the common law rule allowing double recovery. Under the common law, plaintiffs could recover doubly for the same injury, receiving compensatory payments from third-party contributors, such as insurers, and also an award of damages against the tortfeasor. *Swanson v. Brewster,* 784 N.W.2d 264, 268–69 (Minn.2010) (recounting collateral-source history). Before the statute was enacted, the common-law collateral-source rule allowing this double recovery was premised on the notion that tortfeasors should pay the entire amount to compensate the injured party regardless of any other compensation sources. *See id.* Therefore, "collateral-source benefits [that] a plaintiff receive[d][had] no impact on a tortfeasor's responsibility to pay damages." *Id.* at 268 This rule had the public-policy benefit of retaining the deterrent effect of civil litigation against a tortfeasor while also retaining the incentive for potential plaintiffs to secure their own sources of self-protection.

But a competing public policy tends to disfavor double recovery. The legislature responded by passing the collateral-source statute in 1986, preventing some, but not

all, double recoveries by injured plaintiffs. 1986 Minn. Laws c. 45, § 80, at 878–79. The resulting statute, the interpretation of which is the subject of this dispute, requires the district court to reduce damages for an injury or disability suffered by a plaintiff when certain collateral sources have provided for payment for the injuries. In relevant part here, the statute requires the district court to reduce damages awards for plaintiffs who have received payments from

> (1) a federal, state, or local income disability or Workers' Compensation Act; or other *public program providing medical expenses, disability payments, or similar benefits;*
>
> (2) health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; *except* life insurance benefits available to the plaintiff, whether purchased by the plaintiff or provided by others, *payments made pursuant to the United States Social Security Act,* or pension payments.

Minn.Stat. § 548.251, subd. 1(1)–(2) (emphasis added); *see also id.,* subd. 3 (requiring court to reduce damages award by collateral source payments offset by amounts paid by the plaintiff to secure the right to the collateral source payment).

The issue we face, which is whether Medicare benefits constitute a collateral source that is excepted by the statute's exception clause, has an additional wrinkle. The supreme court recently held that a negotiated medical-care discount, that is, the amount that a plaintiff is billed by a medical-care provider but that she does not have to pay because her insurer negotiated with her provider on her behalf for a reduced cost, is also a collateral source that requires a damages reduction under the statute. *Swanson,* 784 N.W.2d at 265.

The district court here held that the Medicare payments covering Renswick's medical costs and the Medicare-negotiated discounts reducing those costs without payment (which together appear to us from the record to total approximately $50,000) constitute a collateral source that is excepted by the statute's exception clause because they are "payments made pursuant to the United States Social Security Act." We conclude that the district court applied the statute correctly and that Renswick's receipt of Medicare benefits provides no basis for a reduction in her damages award. Medicare falls within the Social Security Act and is a medical insurance program for certain citizens. 42 U.S.C. §§ 426 (1999); 1395C (2005). And on its plain and unambiguous language, the collateral-source statute expressly excepts payments made under that act from its general rule preventing double-recovery. Minn.Stat. § 548.251, subd. 1(2).

▆▆▆▆ Wenzel contends that we must reverse, urging that Medicare is essentially an insurance program and that Renswick's damages award must be reduced by her benefits under that program in the form of payments made by Medicare covering her medical bills and discounts negotiated by Medicare to reduce those bills. He complains that Renswick would otherwise receive a double recovery based on "fictitious money" on a debt that she never really owed, thwarting the intent of the legislature. We will not disregard the letter of an unambiguous enactment in search of its supposed spirit. *See* Minn.Stat. § 645.16. This is always the case, and it is so especially here because the statute sits in the context of the common-law rule that plaintiffs are generally entitled to full recovery from the tortfeasor irrespective of any collateral source payments, and legislation abrogating the common law must be narrowly construed to those circumstances

within the legislation's express abrogation. *See Swanson,* 784 N.W.2d at 279–80. We hold that an injured tort plaintiff's Medicare benefits in the form of payments for medical care or Medicare-negotiated discounts to reduce her medical care costs are collateral sources that are excepted from the collateral-source offset provision of Minnesota Statutes section 548.251, subdivision 1, and, as such, they do not provide a basis to reduce her damages award. On this holding, we must reject Wenzel's argument and affirm the judgment.

## DECISION

Wenzel is not entitled to a new trial, judgment as a matter of law, or a reduction in the damages award because the evidence supports the jury's award and the district court did not abuse its discretion or err in any of its trial or posttrial rulings.

**Affirmed.**